## A01A0990. GORDON v. THE STATE.

(550 SE2d 131)

MIKELL, Judge.

A jury acquitted Roderick Raysheik Gordon of four counts of armed robbery and convicted him of one count of aggravated assault. He appeals from the denial of his motion for new trial, contending that the trial court erred in refusing to declare a mistrial after the prosecutor cross-examined him concerning his silence before and after his arrest. We agree and reverse his conviction.

Evidence adduced at trial shows that on October 8, 1998, Gordon entered a vehicle in Swainsboro occupied by four men: Jamie Heggs, Kenward Tywan Jackson, Twayne Holloway, and Trawaski Fields. The men testified that Gordon had flagged them down and asked for a ride home. Gordon testified that he was standing outside the Bama Club, a known drug hangout, when the men pulled up and requested his assistance in purchasing cocaine. Holloway and Fields testified that they rode by the club twice and picked up Gordon the second time. Heggs and Jackson, however, testified that they never made it to the club. The four witnesses claimed that drugs were never mentioned.

Heggs, Holloway, and Fields testified that they gave Gordon a ride to a neighborhood known as "the projects." Holloway testified that when they reached the projects, an unidentified person approached the car, and Gordon spoke with him briefly. Heggs, Jackson, and Fields, on the other hand, claimed that Gordon exited the car and returned several minutes later. All the witnesses, including Gordon, testified that they resumed driving toward a different neighborhood. Fields, who was driving, testified that Heggs turned to Gordon and said: " '[Y]ou got something, man, cause I seen you and that dude talking, he gave you something. . . .' Then [Gordon] said, 'no, I ain't got no cigarette, ain't got nothing but this Gatt[1] for ya'll. Ya'll gone give me what ya'll got.' " Fields testified that after he saw the gun, he "slammed the car in park," took his money out of his pants, left it on the seat, and ran. Then he heard gunfire. Holloway, who had been sitting in the front seat next to Fields, testified that when he and Fields looked back, Heggs and Gordon were fighting over the gun. Shots were fired, and Holloway was hit in the arm. Holloway then lay down in the front seat until the gunfire ended. However, Holloway testified, when he rose to exit the car, Gordon shot him in the face. Holloway testified that Gordon was shooting from inside the car. Heggs, on the other hand, testified that Gordon was not in the car when he fired the gun. Heggs and Jackson, who were

---

[1] "Gatt" is a colloquial expression for a handgun.

also in the backseat, testified that Gordon held the gun to Heggs' head. Jackson ran and called 911.

Gordon admitted shooting Holloway but claimed he did so in self-defense. Gordon testified that the four men stopped him outside the Bama Club and asked where they could purchase cocaine. Gordon proceeded with them to the home of a drug supplier. The men remained in the car; the supplier came out but failed to negotiate a deal with them. Gordon then asked to be taken home. At that point, Gordon testified, one of the men pulled out a gun and told Gordon to "give it up." Gordon claimed he grabbed the gun, it fired, and then the other man released it. Gordon testified that all the others except Holloway fled. He claimed that Holloway "got out of the car and began to come towards me. And me, being scared for my life . . . I fired. And that's it."

In his first two enumerations of error, Gordon contends that the trial court erred in permitting the state to cross-examine him regarding his failure to explain his innocence to the police and in denying his motion for mistrial on this basis.

During cross-examination, the prosecutor questioned Gordon concerning the events leading up to his arrest. Gordon testified that on the morning after the incident, the police came to his house with the drug supplier, but the supplier failed to identify Gordon. The following colloquy ensued:

Q. Did you tell them who you were?
A. They didn't ask me any questions.
Q. So you're standing there with the police, you know they're investigating this, and you don't tell the police the truth?
A. I don't say nothing at the time.
Q. The police did, in fact, ultimately arrest you, didn't they?
A. Yes, sir.
Q. And they took you in and asked you to give your side of the story, didn't they?
A. Yes, sir, when I told them I had nothing to say without a lawyer present.
Q. And you didn't say anything?
A. Didn't say anything at all.
Q. You're telling us that you are innocent and you didn't tell a soul?

Defense counsel objected to the prosecutor's inquiry into the defendant's silence. In the presence of the jury, the court acknowledged Gordon's right to remain silent. However, rather than excusing the jury, the court also permitted the prosecutor to argue that Gordon "already had an opportunity to talk with the police and tell this story

that he's now telling for the first time but didn't tell it. And so he's been given yet a second opportunity . . . to tell the police." Defense counsel then moved for a mistrial. The prosecutor continued to assert his right to question Gordon and to argue to the jury that Gordon "failed to tell the police his version of the story." The trial court then informed the jury that Gordon was not required to make a statement to the police, either with or without an attorney present. However, the court also told the jury that the prosecutor "has the right to ask [Gordon] questions about his opportunity to tell the statement and what he said. That is admissible evidence." This ruling, in effect, overruled the defense's objection.

The trial court erred in overruling defense counsel's objection to the prosecutor's cross-examination concerning Gordon's pre-arrest and post-arrest silence. "It has been held to be fundamentally unfair to simultaneously afford a suspect a constitutional right to silence following arrest and yet allow the implications of that silence to be used against him for either substantive or impeachment purposes. *Doyle v. Ohio*, 426 U. S. 610, 619 (96 SC 2240, 49 LE2d 91) [(1976)]." *Gibbs v. State*, 217 Ga. App. 614, 615 (458 SE2d 407) (1995). In *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), our Supreme Court extended the holding in *Doyle* to prohibit comment upon a defendant's silence "even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense." *Mallory* prohibits "any testimony touching upon the silence of an accused, because the prejudicial impact of such testimony is far greater than its minimal probative value." (Punctuation omitted.) *Wallace v. State*, 272 Ga. 501, 503 (2) (530 SE2d 721) (2000).

*Mallory* established a hard and fast rule, although federal constitutional precedents did not require such a strict approach. See, e.g., *Fletcher v. Weir*, 455 U. S. 603 (102 SC 1309, 71 LE2d 490) (1982); *Jenkins v. Anderson*, 447 U. S. 231 (100 SC 2124, 65 LE2d 86) (1980). Contrary to the state's contention, our Supreme Court's decision in *Chapman v. State,* 263 Ga. 393 (435 SE2d 202) (1993), did not establish an exception to *Mallory*. The defendant in *Chapman* was tried eight months prior to the promulgation of the *Mallory* rule on December 26, 1991. Accordingly, the rule enunciated therein, prohibiting questions and comments concerning a defendant's silence and obliging a trial court to sustain objections to them, was held inapplicable in *Chapman*. 263 Ga. at 394, n. 2.

Similarly, contrary to the state's contention, this Court's decision in *James v. State,* 230 Ga. App. 615 (497 SE2d 389) (1998),[2] created

---

[2] Two judges concurred specially in *James*, ostensibly rendering the opinion physical precedent only. See Court of Appeals Rule 33 (a).

no exception to the *Mallory* rule. *James* holds that a mistrial, or a reversal of a conviction, is not always required when a jury has heard improper evidence, especially when no objection was made. Finally, *Mullinax v. State*, 242 Ga. App. 561, 562 (1) (530 SE2d 255) (2000), and *Shaheed v. State*, 245 Ga. App. 754 (538 SE2d 823) (2000), are inapposite. Those decisions held that evidence of pre-arrest "silence" in the form of failure to produce documentary proof of ownership was admissible as part of the res gestae in a trial for theft by receiving stolen property.[3] Here, therefore, the trial court erred in overruling defense counsel's objection to the prosecutor's questions on the issue of Gordon's silence. *Cromwell v. State*, 218 Ga. App. 481, 482 (1) (462 SE2d 388) (1995).

Next, we must consider whether the trial court erred in refusing to grant a mistrial. "Whether a mistrial is necessary to protect the defendant's right to a fair trial is a decision largely within the discretion of the trial court." *Burton v. State*, 225 Ga. App. 217, 218 (2) (483 SE2d 658) (1997). "The true focus of this court's inquiry must be whether the testimony produced a trial which was so fundamentally unfair as to deny defendant due process." (Citation and punctuation omitted.) *Gibbs*, supra at 615.

In the case sub judice, as we held in *Gibbs*, supra, "it would be naive to suggest that the evidence concerning defendant's silence did not weaken defendant's position in the minds of the jurors."[4] Id. at 616. The prosecutor repeatedly stressed Gordon's failure to explain the events leading up to his arrest. The court told the jury that the prosecutor had a right to ask Gordon questions about his failure to make a statement. The questions and the ruling impacted Gordon's credibility and, consequently, affected the success or failure of his affirmative defense.[5] Moreover, the evidence was not overwhelming, so we cannot say that the errors were harmless. Cf. *Barnes v. State*, 269 Ga. 345, 352 (12) (496 SE2d 674) (1998). The testimony of the witnesses was contradictory in certain aspects, contributing to the jury's decision to acquit Gordon of the four armed robbery counts in the indictment. Under these circumstances, Gordon must be afforded a new trial.

*Judgment reversed. Blackburn, C. J., and Pope, P. J., concur.*

---

[3] See also *Boykin v. State*, 240 Ga. App. 402, 404 (1) (523 SE2d 605) (1999), where we held that in a trial for burglary, the defendant's failure to explain her presence in the store was admissible as part of the res gestae.

[4] In *Gibbs*, we reversed a conviction for attempted armed robbery based on a police officer's impermissible testimony that the defendant refused to give a statement after he was arrested.

[5] *James*, supra, does not require a contrary result. Its binding effect is questionable, as it is weakened by two special concurrences and relies on precedents which predate *Mallory*.

DECIDED JUNE 13, 2001.

*Tapley & Warnock, Charles M. Warnock, Jr.*, for appellant.
*Steven Askew, District Attorney*, for appellee.