A05A0468. CORNELIUS v. THE STATE.
(616 SE2d 148)

BERNES, Judge.

A Bibb County jury convicted Kendal Bernard Cornelius of one count of aggravated battery and two counts of aggravated assault with a deadly weapon. Cornelius appeals challenging the sufficiency of the evidence to support his convictions for aggravated assault and contending he was denied effective assistance of counsel. Finding no error, we affirm.

We view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. We address only the sufficiency of the evidence, and do not weigh the evidence or determine the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the jury's verdict will be upheld. *Carter v. State*[, 246 Ga. App. 891 (1) (543 SE2d 42) (2000); see] also *Jackson v. Virginia*[, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)].

*Maynor v. State*, 257 Ga. App. 151, 151-152 (570 SE2d 428) (2002).

So viewed, the record reflects that in October 2002, Cornelius provided $200 worth of cocaine to John Jerry Hunt in Macon. As part of the transaction, Hunt and his fiancée, Lana Renee Lambert, drove Cornelius to a local Western Union, ostensibly to pick up the money to pay Cornelius. On the pretext that Lambert would go into the Western Union and get the money, Hunt had Cornelius get out of his single cab pickup truck in order to let Lambert out of the vehicle. However, Hunt then drove off, leaving Cornelius on the street and unpaid.

Hunt returned to Macon to buy cocaine on December 16, 2002. Lambert again accompanied him, this time bringing her seven-year-old daughter as well. During the day, Hunt twice bought drugs in the neighborhood where he had gotten drugs from Cornelius in October. That evening, Hunt, along with Lambert and her daughter, drove back to the same neighborhood to make a third purchase. After initially circling the block, Hunt brought his truck to a stop when two men approached him from the curb of the street. At that point, Cornelius stepped between the two men, said "Remember me," and fired a handgun at close range four or five times into the cab of the truck. Hunt was hit, and as a result, was paralyzed in one of his legs. Hunt pushed Lambert's daughter to the floorboard of his truck as the shooting took place. Neither Lambert nor her daughter were hit.

1. Cornelius contends that there was insufficient evidence to convict him of the two counts of aggravated assault. The indictment alleged that Cornelius assaulted Lambert and her daughter with a deadly weapon by shooting at them.

> The offense of aggravated assault under OCGA § 16-5-21 has two essential elements: (1) that a simple assault under OCGA § 16-5-20 was committed on the victim and (2) that it was aggravated by . . . (b) use of a deadly weapon as provided in OCGA § 16-5-21. . . .

*Maynor v. State*, supra at 153. "A person commits the offense of simple assault when he or she either . . . [a]ttempts to commit a violent injury to the person of another; or . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury.'" OCGA § 16-5-20 (a) (1), (2).

Cornelius contends there was no evidence that he intended to shoot or shot at Lambert and her daughter or that he placed them in reasonable apprehension of immediately receiving a violent injury. We disagree.

As an initial matter, Lambert testified that the perpetrator shot at her. Furthermore, in light of the testimony at trial concerning the number of rounds Cornelius fired into the confined space of Hunt's

single cab pickup truck, the jury was authorized to conclude that Cornelius was shooting indiscriminately at the occupants of the truck. The jury was also authorized to "surmise" based on Lambert's testimony "that the victim[s]/witness suffered apprehension of being shot."[1] *Roberts v. State*, 267 Ga. 669, 671 (1) (482 SE2d 245) (1997). Any rational trier of fact could have found Cornelius guilty beyond a reasonable doubt of the offense of aggravated assault with a deadly weapon upon Lambert and her daughter. *Jackson v. Virginia*, supra.

2. Cornelius contends that he received ineffective assistance of counsel at trial because his trial counsel (a) failed to object to certain testimony provided by a Macon Police Department investigator; (b) elicited testimony from the investigator on cross-examination that was favorable to the State; and (c) failed to advise Cornelius of his right to plead not guilty under *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).

To establish an ineffectiveness claim, the defendant must show that trial counsel's performance was deficient and that the deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985). Because Georgia does not recognize the cumulative error doctrine, we analyze each of Cornelius' claims of ineffective assistance separately under the *Strickland* standard. *Howren v. State*, 271 Ga. App. 55, 58 (5) (608 SE2d 653) (2004).

(a) Cornelius argues that his trial counsel rendered ineffective assistance of counsel by failing to object to certain portions of a Macon Police Department investigator's testimony. He first contends his trial counsel should have objected to a response by the investigator that he argues expressed an opinion on the ultimate issue and impermissibly bolstered the State's evidence. On direct examination, the State's attorney asked the investigator if she had made "a decision about a possible suspect" after interviewing Lambert and three other witnesses. The investigator replied "That Lil K," who she had identified as Cornelius, "was responsible for shooting Mr. Hunt."

At the *motion for new trial* hearing, Cornelius' trial counsel testified he did not object to the investigator's response because it "fit just right with . . . the strategy I had for trying to minimize Detective Aldridge's investigating process." Trial counsel explained his trial strategy was to show that the investigator had "jumped to the conclusion" that Cornelius was guilty and set out to develop facts to support her theory rather than following other leads based on the evidence, including several potential suspects with lengthy criminal

---

[1] Lambert testified that she was panicked and that her daughter remained on the floorboard until she pulled her up.

records. Trial counsel noted that he had successfully employed this strategy in Cornelius' initial trial which resulted in a hung jury. Thus, pretermitting whether the investigator's response was objectionable as contended by Cornelius, trial counsel's failure to object did not constitute deficient performance. "Trial strategy and tactics do not equate with ineffective assistance of counsel. Inasmuch as the tactical decision was not patently unreasonable, the trial court did not err . . ." in rejecting Cornelius' claim on this ground. (Footnotes omitted.) *Pickett v. State*, 271 Ga. App. 250, 253 (609 SE2d 181) (2005).

Cornelius also contends that his trial counsel should have objected to another portion of the investigator's testimony that he argues constituted a comment upon his post-arrest silence. The relevant testimony was as follows:

> Q: And what did you do to continue the investigation after Mr. Cornelius was arrested?
> A: I attempted to go speak with Mr. Cornelius at the jail.
> Q: Okay. Well, other than that, what did you do to continue the investigation?
> A: I went to him to find out who the other individuals were that were named or seen at the scene. . . .

Cornelius asserts that the investigator's testimony implicitly commented on the fact that he had invoked his right to remain silent, since the investigator never stated whether he had answered her questions at the jail.

"It has been held to be fundamentally unfair to simultaneously afford a suspect a constitutional right to silence following arrest and yet allow the implications of that silence to be used against him for either substantive or impeachment purposes. [Cits.]" *Gordon v. State*, 250 Ga. App. 80, 82 (550 SE2d 131) (2001). However, to reverse a conviction on this ground, "the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury." (Citation and punctuation omitted.) *Taylor v. State*, 272 Ga. 559, 561 (2) (d) (532 SE2d 395) (2000).

Even if the investigator traveled to the jail holding Cornelius in order to question him, the investigator's testimony does not reveal whether she was ever successful in actually arranging to meet with him and question him, much less that Cornelius chose to exercise his right to remain silent when questioned by her. It is a *comment* upon a defendant's silence by a witness which is impermissible under our law, not mere speculation or conjecture by a defendant that a jury could have inferred such a comment from the witness' testimony.

*Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991). Under the circumstances of this case, we cannot say that the investigator's testimony involved an improper comment on Cornelius' exercise of his right to remain silent. Id. at 629; *Gordon v. State*, supra at 81; *Taylor v. State*, supra at 562. Consequently, trial counsel's failure to object to the testimony was not deficient. *Hayes v. State*, 262 Ga. 881, 884-885 (426 SE2d 886) (1993).

(b) Cornelius contends his trial counsel rendered ineffective assistance by eliciting damaging testimony from the investigator during cross-examination. Pursuant to trial counsel's inquiry, the investigator testified that one of the witnesses had stated he had seen Cornelius in possession of a Highpoint .380, the type of handgun used in the shooting. A review of the record reveals that trial counsel also elicited testimony from the investigator that another state's witness had stated Cornelius did not possess a Highpoint .380, but instead possessed another type of handgun.

Trial counsel testified at the motion for new trial hearing that he purposely elicited the complained-of testimony in order to bring out inconsistencies in the accounts of the two witnesses. He explained:

> I had to figure out some way to limit any damage based on their ability to identify the exact kind of gun that everybody said Mr. Hunt . . . was shot with. . . . I tried to do that by saying . . . this other fellow had said it was a different kind of gun to show that — back to the theory of the case was that . . . this was a conspiracy between drug dealers but they hadn't been able to conspire well enough to get all the details straight. . . . I tried . . . to show that you could have a conspiracy . . . based on just three or four guys saying, yeah, we did it but we're going to blame it on somebody else. . . . Those details are what I described in a closing as being the reasonable doubts. . . .

We cannot say that trial counsel's strategy was unreasonable as a matter of law. "Effectiveness is not judged by hindsight or by the result." *Wallace v. State*, 228 Ga. App. 686, 691 (4) (492 SE2d 595) (1997). Again, because "trial strategy and tactics do not equate with ineffective assistance of counsel," Cornelius failed to meet his burden of proving deficient performance as to this allegation. *Pickett v. State*, supra.

(c) Finally, Cornelius argues that his trial counsel was ineffective because he failed to inform him of the possibility of entering a plea under *North Carolina v. Alford,* supra. By implication, Cornelius asserts that he was entitled to enter such a plea. However, "a defendant has no constitutional right to enter a guilty plea, and

[Cornelius] points to no evidence that the trial court was willing to accept such a plea." (Footnote omitted.) *Turley v. State*, 265 Ga. App. 385, 387 (2) (593 SE2d 916) (2004). See also *North Carolina v. Alford*, supra at 38, n. 11; *Jackson v. State*, 251 Ga. App. 578, 580 (2) (554 SE2d 768) (2001). Furthermore, trial counsel testified at the motion for new trial hearing that Cornelius and his family members had rejected any possibility of entering a plea from his first involvement in the case, and that Cornelius had declined the offer of a plea bargain proposed by the State. "Under these circumstances, [Cornelius'] attorney was not deficient in failing to advise his client about *Alford* pleas." *Turley v. State*, supra.

Judgment affirmed. *Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 21, 2005 — 

*Zell & Zell, Rodney S. Zell*, for appellant.
*Howard Z. Simms, District Attorney, Sandra G. Matson, Assistant District Attorney*, for appellee.