## A06A0667. KANIA v. THE STATE.
### (634 SE2d 146)

ADAMS, Judge.

Donald Allen Kania appeals the trial court's denial of his motion for new trial following his conviction on one count of manufacturing marijuana. We affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence." (Citation omitted.) *Hill v. State*, 276 Ga. App. 874 (625 SE2d 108) (2005). Viewed in that light, the evidence shows that in May 2002, Kania purchased hydroponic growing equipment from a store in Athens, which was then the subject of an investigation by federal and state authorities. Kania was identified through his license tag number and a Georgia Bureau of Investigation agent forwarded this information to Agent Fran Foster of the Appalachian Drug Task Force in Union County, where Kania lived. Foster investigated Kania, even making a pretextual visit to his house, but did not discover any evidence of illegal activity.

A few months later, the Union County Sheriff's Office was notified of a domestic dispute at the Kania home. When Deputy Sheriff Tim Wood arrived, he overheard a conversation between Kania's wife, Peggy, and her sister. The sister was urging Peggy to show the officer what was on a computer disk. Deputy Wood asked Peggy what was on the disk, and she said there were photographs of marijuana plants. She later gave the deputy permission to search the house and led him to a hidden room in the basement, which contained equipment which Deputy Wood believed was consistent with a hydroponic growing lab. Although the room contained no marijuana plants, the deputy observed what he believed to be marijuana residue on the floor. He then notified Agent Foster. This residue was later identified by the state crime lab as marijuana.

Agent Foster, who had continued surveillance on Kania, arrived on the scene and spoke with Peggy. After Agent Foster read Peggy her *Miranda* rights, Peggy signed a consent waiver allowing Foster to search the basement/garage area of the home. Agent Foster searched the hidden room and observed equipment and chemicals consistent with hydroponic cultivation, as well as marijuana residue. Peggy also directed police to a burn pile, where Agent Foster located a burned stalk that she believed, based upon her drug-specific training, was consistent with a marijuana stalk.

Kania was placed under arrest for manufacturing marijuana and taken to the police station where Agent Foster met with him. After the agent read Kania his *Miranda* rights, Kania signed a written waiver of rights form. Kania then told the agent that he had been growing marijuana for his own personal use because he did not want to buy it

on the streets. He said that he smoked marijuana for medical reasons in connection with a work-related spinal injury. He conceded that Peggy smoked a little marijuana but stated that she was not involved in the growing process. He also said that he had removed the plants about one month earlier and burned them in the yard after he got the feeling that he was being watched by police. Kania signed a written statement admitting that he had grown marijuana.

At trial, however, both Kania and his wife, Peggy, denied that he had grown marijuana. Instead, they stated that he had used the hydroponic equipment to grow vegetables to feed their pet skunks.

1. Kania first asserts that the trial court erred in admitting his custodial statement because he contends that he made the statement under duress. "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50.

Kania testified at the *Jackson v. Denno*[1] hearing that police told him that his wife would be arrested if he did not confess. He said that he made his statement to police to prevent his wife from going to jail and to save his marriage. Peggy also testified that she was threatened with arrest if she did not cooperate with police, and that she told Kania in a telephone call that she would be arrested if he did not confess.

Agent Foster acknowledged that Kania told her at the police station that he was making the statement to keep Peggy out of jail. But she told Kania at the time that Peggy was not going to be arrested, and that she had no plans to pursue her. The agent also denied ever telling Peggy that she was going to be arrested.[2] Thus, according to Agent Foster, Kania was aware at the time of his statement that Peggy was not in danger of arrest. Based upon this testimony, which the judge stated he found "more credible," the trial judge determined that Kania's statement was freely and voluntarily given.

To allow the admission of a custodial statement, a trial court must consider the totality of the circumstances and be satisfied by a preponderance of the evidence that the statement was freely and voluntarily given. *Ruffin v. State*, 263 Ga. App. 618, 619 (2) (588 SE2d 802) (2003). And this Court must accept the trial court's determination that Kania's statement was voluntary unless that decision was clearly erroneous:

---

[1] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[2] Peggy testified that she was later arraigned on a charge of manufacturing marijuana, but the charge was dismissed and she was told by Agent Foster that the charge had been a mistake.

When a trial judge has made a determination as to the voluntariness of a confession after a suppression hearing, such determination must be accepted by the appellate courts unless his decision is clearly erroneous. Likewise, factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal unless clearly erroneous.

(Footnote omitted.) *Burdette v. State*, 251 Ga. App. 30, 31 (1) (553 SE2d 340) (2001). Because Agent Foster's testimony supported the trial court's determination that Kania's statement was voluntary, we cannot say that the ruling was clearly erroneous. *Escutia v. State*, 277 Ga. 400, 402 (589 SE2d 66) (2003).

2. Kania next contends that the trial court erred in allowing Agent Foster to refer to his invocation of the right to remain silent. The agent testified that she advised Kania of his *Miranda* rights, and then asked if he wanted to make any statements. She said that "he declined [to make] any statements." Kania's attorney did not pose an objection, but shortly afterward, the trial judge stopped proceedings and sent the jury out. Although the judge stated that he would have given curative instructions in response to a motion, Kania's attorney stated "at this point, I don't want to bring that subject up again."

"It has been held to be fundamentally unfair to simultaneously afford a suspect a constitutional right to silence following arrest and yet allow the implications of that silence to be used against him for either substantive or impeachment purposes. [Cits.]" *Gordon v. State*, 250 Ga. App. 80, 82 (550 SE2d 131) (2001). But to reverse Kania's conviction, " 'the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury.' (Citation and punctuation omitted.) *Taylor v. State*, 272 Ga. 559, 561 (2) (d) (532 SE2d 395) (2000)." *Cornelius v. State*, 273 Ga. App. 806, 809 (2) (a) (616 SE2d 148) (2005).

Thus, not every reference to a defendant's invocation of the right to remain silent entitles a defendant to a reversal. Instead,

the error may be found to be harmless beyond a reasonable doubt. The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.

(Footnote omitted.) *Crenshaw v. State*, 272 Ga. App. 350, 354 (612 SE2d 539) (2005).

Here, Agent Foster made the statement gratuitously and not in response to a specific question. The state made no effort to highlight the statement for the jury or to suggest any inference that could be drawn from Kania's invocation of his rights. After several more questions, the court removed the jury from the courtroom, but no further reference was made to the officer's improper statement. Accordingly, "analyzing the comment in context, it is very unlikely to have had any impact on the jury's determination of guilt." *Brewer v. Hall*, 278 Ga. 511, 514 (3) (603 SE2d 244) (2004). And the evidence at trial, while not overwhelming, was strong, when juxtaposed with the likely impact of Agent Foster's offhand statement. We find, therefore, that the statement was harmless beyond a reasonable doubt.[3] Id.

3. Kania next takes issue with Agent Foster's use of the phrase "arrest record" in her testimony and to the trial court's denial of his motion for a mistrial on this ground. Agent Foster stated that after asking Kania to sign a waiver of rights form, the two began discussing his background, "basically, an arrest record that I did." Kania's attorney objected and, after the jury was removed, moved for a mistrial. The trial judge did not grant the motion, but instead admonished the witness not to use that language and later gave the jury curative instructions. He told the jurors that Agent Foster "did not mean to intimate in any manner anything that might relate to the history of this defendant" and directed them to disregard the word "arrest" in her testimony.

A passing reference to a defendant's record does not place his character in evidence. *Roebuck v. State*, 277 Ga. 200, 205 (5) (586 SE2d 651) (2003); *Zellner v. State*, 260 Ga. 749, 751 (3) (b) (399 SE2d 206) (1991). Agent Foster did not specifically state that Kania had a prior arrest record. Rather, her statement, though ambiguous, referred to a record that she prepared at the time of his arrest in this case, not to Kania's history. We find that this testimony did not place Kania's character at issue. *Bowden v. State*, 279 Ga. App. 173, 180-181 (5) (630 SE2d 792) (2006).

Nor do we find error in the trial court's failure to grant a mistrial on this ground.

---

[3] We also find that Kania has failed to establish that his trial attorney was ineffective in failing to object to this testimony. Because we have found that any error was harmless, Kania cannot establish that he was prejudiced by his trial attorney's failure to object to this testimony. *Cornelius v. State*, 273 Ga. App. at 810 (2) (a).

> When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. . . . A trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

(Citation and punctuation omitted.) *Agee v. State*, 279 Ga. 774, 777 (4) (621 SE2d 434) (2005). Considering the context of the statement, the trial court's curative instructions, and the strength of the evidence in the case, we find no abuse of discretion. Id.; *Brown v. State*, 277 Ga. App. 514, 516 (2) (627 SE2d 136) (2006).

4. Kania also contends that the trial court erred in allowing the admission of certain hearsay testimony. But this argument was waived by Kania's failure to make a contemporaneous objection to the evidence at trial. *Brinson v. State*, 276 Ga. 671 (581 SE2d 548) (2003); *Wilson v. State*, 277 Ga. 114, 117 (2) (587 SE2d 9) (2003); *Roseberry v. State*, 274 Ga. 301, 303-304 (3) (553 SE2d 589) (2001).

5. Kania further asserts that the trial court erred in denying his motion for new trial on the ground that he received ineffective assistance of counsel. In order to establish ineffective assistance of counsel, Kania was required to show that his trial attorney's performance was deficient and that this performance prejudiced his defense. *Ellison v. State*, 242 Ga. App. 636, 638 (7) (530 SE2d 524) (2000), citing *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). On appeal, we uphold the trial court's determination that trial counsel was effective unless that determination was clearly erroneous. *Alston v. State*, 277 Ga. App. 117 (1) (625 SE2d 475) (2005). In addition, "[t]here is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citation omitted.) *Burdette v. State*, 276 Ga. App. 695, 699 (3) (624 SE2d 253) (2005).

(a) Kania asserts that his trial attorney was ineffective in failing to preserve the appellate record, and in particular in failing to object to certain hearsay testimony. But Kania's attorney testified at the hearing on the motion for new trial that his decision not to raise numerous objections, including objections to hearsay, was a tactical one. Because he believed that most of the evidence was consistent with Kania's defense, he chose to follow a strategy of allowing the jury to focus on that defense, rather than a strategy of disrupting the flow

of the testimony with numerous technical objections. Further, he stated that he was "not a big fan of objecting to hearsay anyway. If you catch it too late and then stand up, then they get to hear it two or three times." It is well settled that

> [t]rial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.

(Citation omitted.) *Terrell v. State*, 276 Ga. App. 102, 104 (2) (622 SE2d 434) (2005). Kania failed to overcome the presumption that his counsel's strategy of presenting the defense without interrupting the flow of evidence with numerous objections, including objections to hearsay, was reasonable trial strategy and thus he failed to establish ineffective assistance of counsel on this ground.

(b) Kania also argues that his trial counsel was deficient in failing to object to Agent Foster's testimony regarding what she believed to be a marijuana stalk in the burn pile. He notes that there was no scientific evidence that the stalk was from a marijuana plant and further notes that under OCGA § 16-13-21 (16), a defoliated stalk cannot constitute marijuana under the criminal code. Moreover, he notes that his trial attorney admitted that he was not aware at the time of trial that the stalk would not be considered an illegal substance under OCGA § 16-13-21 (16).

But expert testimony based on scientific tests is not necessarily required to establish that a substance is marijuana where the identifying witness has the requisite training in the narcotics field. *Atkinson v. State*, 243 Ga. App. 570, 571 (1) (531 SE2d 743) (2000). In this case, the state introduced scientifically-identified marijuana residue taken from the floor of the hydroponics lab, which evidence would be sufficient to support Kania's conviction. Agent Foster's additional testimony regarding the stalk found in the burn pile was based upon her experience and training. She testified that she had had approximately 600 hours in training in undercover narcotics, including specialized training on the identification and testing of marijuana. And even though the stalk would not be considered an illegal substance under OCGA § 16-13-21 (16), the testimony was relevant as it corroborated Kania's confession that he burned the marijuana he was growing after he became concerned that he was under police surveillance. In addition, Kania's trial attorney testified that he did not think it was all that helpful to focus on the stalk because it may have emphasized that the substance was marijuana before it got burned.

Under these circumstances, we find that Kania has failed to establish that his trial attorney's performance was deficient on this ground.

(c) Kania also contends that his trial attorney was ineffective in failing to object to the state's closing argument, in which the prosecutor incorrectly stated that the burden of proof was on the defendant. But Kania's attorney testified that he did not object because he knew the trial court would instruct the jury that the attorney's argument was not evidence, and then would tell the jury that the state had the burden of proof. He stated, "I thought the judge telling them exactly the opposite was a lot better than me standing up and talking . . . when juries are very, in my experience, attentive to what the judges say. They get the hang of the lawyers after a while and sometimes tune us out, and I think they're much more attentive to what judges say." And, in fact, the trial judge instructed the jury that the state had the burden of proof and that the burden never shifted to the defendant. Once again, the attorney's failure to object was a question of trial strategy and does not form the basis for a claim of ineffective assistance of counsel. *Moss v. State*, 278 Ga. App. 362, 366 (2) (b) (629 SE2d 5) (2006).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JULY 10, 2006.

*Beverly Harris*, for appellant.
*N. Stanley Gunter, District Attorney*, for appellee.