A06A1983. JOHNSON v. THE STATE.
(642 SE2d 170)

BERNES, Judge.

Following the grant of a mistrial, Ahmad Johnson (a/k/a Mavon Washington) was retried and convicted of multiple offenses relating to a violent home invasion that resulted in severe injuries to the

---

female resident and her elderly neighbor and the subsequent shooting of a law enforcement officer.[1] On appeal from the denial of his amended motion for new trial, Johnson does not challenge the sufficiency of the evidence. Rather, he contends that the trial court erred by: (1) failing to maintain an adequate record of the case; (2) denying his motion to suppress DNA evidence; (3) failing to ensure that he was present at all critical stages of the trial proceedings; (4) granting a mistrial; (5) denying his lead trial counsel's motion to withdraw and preventing Johnson from proceeding with trial counsel of his choice; (6) failing to excuse certain prospective jurors for cause; and (7) denying his challenge to the state's jury strikes under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).[2] Johnson also argues that he was denied the effective assistance of trial counsel. Finding no reversible error, we affirm.

1. Johnson first contends that the trial court failed to ensure that an adequate record was kept of the trial proceedings, thereby depriving him of his right to full and fair appellate review. To support his claim of error, Johnson points to an in-chambers conference held between the state, defense counsel, and the trial court that was not transcribed and that dealt with the issue of whether a mistrial ought to be granted. Johnson also points to several places in the voir dire transcript where sentences or phrases were transcribed as "inaudible" by the reporter.

We conclude that none of these omissions from the record constitute reversible error. "Georgia law clearly requires that in all felony cases there be prepared a transcript of evidence and proceedings. OCGA § 5-6-41." *Smith v. State*, 251 Ga. 229, 230 (2) (304 SE2d 716) (1983). But, the failure to transcribe limited portions of the trial proceedings does not constitute reversible error, if the defendant "fails to show how he was harmed or to raise any issue which this Court is unable to adequately review because of skips in the record." (Citations and punctuation omitted.) *Smalls v. State*, 174 Ga. App. 698, 699 (2) (331 SE2d 40) (1985).

Although the in-chambers conference over whether a mistrial should be granted was not transcribed, the defense's renewed motion for a mistrial, the trial court's grant of the motion, and the trial court's legal reasons for doing so were all subsequently placed on the record.

---

[1] Specifically, Johnson was convicted of three counts of aggravated battery, two counts of burglary, two counts of kidnapping with bodily injury, two counts of armed robbery, two counts of financial transaction fraud, aggravated assault, theft by taking, and obstruction.

[2] Additionally, Johnson enumerates as error the trial court's failure to grant a continuance so that defense counsel would have more time to prepare for trial, but he has failed to provide any citations to the record or legal argument in support of the enumeration. Johnson thus has abandoned this enumeration on appeal. See Court of Appeals Rule 25 (c) (2), (3) (i).

Additionally, the state, defense counsel, and the trial court related what they remembered was discussed during the conference at a subsequent hearing on Johnson's motion for plea in bar — a hearing that was itself transcribed. The record as it exists thus is sufficient to allow this Court to review the mistrial issue. As to the voir dire transcript, Johnson fails to explain how he was harmed by the fact that certain responses by potential jurors were transcribed as "inaudible" by the reporter, since he does not allege any substantive legal error in voir dire with respect to those particular jurors. Accordingly, Johnson has pointed to no omissions from the record that would justify reversal. See *Smith*, 251 Ga. at 230 (2); *Smalls*, 174 Ga. App. at 699 (2).

2. Johnson next argues that the trial court should have granted his motion to suppress DNA evidence. In this regard, Johnson asserts that the affidavit submitted by law enforcement was insufficient to provide probable cause for the magistrate to issue a search warrant authorizing the taking of a blood sample and mouth swab from his person. "However, the burden is on him who asserts error to show it affirmatively by the record. Because the record does not contain the search warrant or the affidavit submitted in support thereof," this issue has not been preserved for appeal. (Punctuation and footnote omitted.) *Lighten v. State*, 259 Ga. App. 280, 284-285 (3) (576 SE2d 658) (2003).

We nevertheless note that in its order denying Johnson's suppression motion, the trial court listed the pertinent facts set forth in the affidavit provided to the magistrate. Those facts were that the victims had been beaten and tied up by masked gunmen; that both of their residences had been ransacked by the gunmen; that the Savannah Police Forensics Unit was on scene and determined that blood found in one of the residences was from an unknown source and was unlikely to have been transferred from the victims; that shortly after the home invasion, a Visa debit card owned by one of the victims was used at a Dillard's department store; that a video of the transaction at Dillard's was made and photographs were taken from the video; that a son of one of the victims identified Johnson from the still photographs taken from the video; and that it appeared from the video that Johnson had a bandage on his left hand.

Based on the facts alleged in the officer's affidavit as set forth by the trial court, we conclude that the magistrate had a substantial basis for finding that probable cause existed and issuing the search warrant for obtaining a blood sample and mouth swab from Johnson. See generally *Delay v. State*, 213 Ga. App. 199, 201 (4) (444 SE2d 140) (1994) (upholding search warrant to obtain blood sample from defendant, when there was information available to the magistrate that

defendant participated in the crime, and a sample was needed to determine the source of blood observed by law enforcement).

3. Johnson claims that his constitutional right to be present at all critical stages of the trial proceedings was violated, given that he was not present at the in-chambers conference pertaining to the mistrial issue. While Johnson was not present at the in-chambers conference, he was present afterward when the mistrial issue was first discussed on the record by the trial court and defense counsel. Nevertheless, Johnson's counsel made no objection to Johnson's absence from the conference at that time, and Johnson himself remained silent when the mistrial issue was then brought up and resolved on the record.

"It is well-established that a defendant has a constitutional right to be present at every stage of the proceedings materially affecting his case, . . . and that the right to be present may be waived if the defendant later acquiesces in the proceedings occurring in his absence." (Citation and punctuation omitted.) *Jackson v. State*, 278 Ga. 235, 237 (3) (599 SE2d 129) (2004). Based on our review of the record, we conclude that Johnson acquiesced to the proceedings that occurred in chambers in his absence, given the failure of Johnson or his trial counsel to lodge an objection to his absence when the mistrial issue was first raised and resolved on the record following the conference. See id.; *Wilson v. State*, 274 Ga. 637, 639 (3) (555 SE2d 725) (2001).

In any event, the in-chambers discussion over whether a mistrial was justified clearly involved a substantive legal matter of which Johnson "presumably [had] no knowledge." *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). Furthermore, "the substance of that discussion was later placed on the record in [Johnson]'s presence." Id. at 112 (2). Accordingly, Johnson has failed to demonstrate that he was harmed by his absence from the in-chambers conference. See id. at 111-112 (2). See also *Parks v. State*, 275 Ga. 320, 323-325 (3) (565 SE2d 447) (2002).

4. Johnson contends that the trial court erred in granting a mistrial in the first trial of the case. This claim is without merit. The record reflects that after the in-chambers conference on the mistrial issue, the trial court asked defense counsel on the record whether the defense wanted to renew its motion for mistrial, and defense counsel answered in the affirmative. The trial court then granted a mistrial and set out its reason for doing so, after which defense counsel stated, "Thank you, Your Honor." No matter how erroneous a trial court's ruling might be, a defendant cannot invite or acquiesce to the ruling and then complain about the ruling before this Court. *Compton v. State*, 281 Ga. 45, 46 (2) (635 SE2d 766) (2006); *Paige v. State*, 277 Ga. App. 687, 694 (627 SE2d 370) (2006). Accordingly, Johnson has waived any challenge to the trial court's grant of a mistrial on appeal.

See *Compton*, 281 Ga. at 46 (2). Cf. *State v. Johnson*, 267 Ga. 305 (477 SE2d 579) (1996) ("[I]f a defendant consents to a mistrial, he may not thereafter utilize the mistrial as the basis of a plea of double jeopardy.") (citations omitted).

5. In several related enumerations of error, Johnson asserts that the trial court erred by denying his lead trial counsel's motion to withdraw and by not permitting Johnson to proceed to trial with counsel of his choice. On the day the retrial of the case was to commence, Johnson's court-appointed lead counsel moved to withdraw from representation. Lead defense counsel informed the trial court that Johnson had lost confidence in him, because Johnson was angry that counsel never sought his permission to move for a mistrial in the previous case and failed to secure his attendance at the in-chambers conference discussing the same. As a result, it was Johnson's request that lead counsel be permitted to withdraw from the case and that he be allowed to retain alternative lead counsel or proceed to trial with only his current associate counsel representing him. Ultimately, the trial court denied the motion to withdraw filed by Johnson's lead counsel, and instead ruled that Johnson had the choice of either continuing to be represented by both his current lead and associate counsel, or representing himself. Johnson declined to represent himself, and the case was then tried with Johnson being represented by his lead and associate counsel.

The decision whether to grant a motion to withdraw representation falls within the sound discretion of the trial court. *Rouse v. State*, 275 Ga. 605, 608-609 (9) (571 SE2d 353) (2002). An indigent defendant is not entitled to have his appointed counsel discharged unless he can demonstrate "justifiable dissatisfaction with counsel, such as conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and client." (Citation and punctuation omitted.) Id. at 609 (9), n. 21. See also *Bryant v. State*, 268 Ga. 616, 617 (2), n. 4 (491 SE2d 320) (1997). If the defendant fails to show justifiable dissatisfaction, the trial court is entitled to require the defendant to choose between his current representation and proceeding pro se. *Moody v. State*, 244 Ga. App. 214, 216-217 (2) (c) (534 SE2d 912) (2000).

We conclude that the trial court did not abuse its discretion under the circumstances of this case. We agree with Johnson that the better practice would have been for lead counsel to insist that all discussions regarding the mistrial take place in open court and to have consulted with him before moving for a mistrial. See *Van Alstine v. State*, 263 Ga. 1, 2-3 (426 SE2d 360) (1993) (noting that the decision over "what trial motions should be made[ ] and all other strategic and tactical decisions are the exclusive province of the lawyer *after consultation*

*with his client*") (citation and punctuation omitted; emphasis supplied). Nevertheless, the ultimate decision over whether to move for a mistrial is a strategic one made by the lawyer, not the client. See id.; *Fortson v. State*, 240 Ga. 5 (1) (239 SE2d 335) (1977); *Berry v. State*, 262 Ga. App. 375, 377 (2) (c) (585 SE2d 679) (2003) (noting that "counsel's decision whether to move for a mistrial generally falls within the ambit of trial strategy") (footnote omitted). See also *United States v. Burke*, 257 F3d 1321, 1324 (11th Cir. 2001) (holding that the decision whether to seek a mistrial "is a tactical decision entrusted to defense counsel, binding the defendant even when the defendant expressed a contrary wish to his lawyer"). And, the fact that defense counsel and his client disagreed over a strategic issue, causing tension in their relationship, was not sufficient, standing alone, to require the discharge of defense counsel. See *Bryson v. State*, 282 Ga. App. 36, 41 (3) (638 SE2d 181) (2006).

Furthermore, we do not believe that the disagreement and tension between Johnson and his lead counsel over this single incident *mandated* that the trial court grant the motion to withdraw, given the timing of the motion and the fact that lead counsel was prepared and ready to proceed with the case. See *Bryson*, 282 Ga. App. at 41 (3). A trial court is entitled to "decline an attorney's request to withdraw if 'to do so would delay the trial of the action.'" Id., quoting Uniform Superior Court Rule 4.3 (1). Here, the trial court already had discharged one attorney and appointed another for Johnson earlier in the case; the motion to withdraw was filed on the very day the trial was set to commence; the first trial had resulted in a mistrial; and the trial had already been rescheduled five previous times. Given these combined factors, the trial court was entitled to deny the motion to withdraw. See id.

Nor did the trial court err in ruling that Johnson could not simply proceed forward with only his associate counsel representing him at trial, since the record reflects that associate counsel was not in a position to solely represent Johnson in what undisputably was a complex case. At the pretrial hearing on the motion to withdraw, associate counsel stated that he was not qualified under the Chatham County Indigent Defense Guidelines to handle such a complex case solely by himself, and he emphasized that lead counsel and he had previously divided up the witnesses, which would put Johnson at a "huge disadvantage" if associate counsel suddenly was responsible for direct or cross-examination of all the witnesses in the case. Associate counsel went on to inform the trial court, "I think there's no doubt, anyway, that I am not qualified to be lead counsel on this." In these circumstances, the trial court did not abuse its discretion in finding that Johnson's associate counsel could not handle the entire trial on his own. See *Lipham v. State*, 257 Ga. 808, 810-811 (2) (364

SE2d 840) (1988) (trial court was entitled to limit participation of defense counsel, when he was not qualified to serve as lead counsel in the case).

6. Johnson next contends that the trial court erred by failing to exclude for cause three prospective jurors, Panel Members 8, 38, and 42.[3] "In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence." (Punctuation and footnote omitted.) *Barnes v. State*, 269 Ga. 345, 351 (7) (496 SE2d 674) (1998). "A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause." (Citation omitted.) *Holmes v. State*, 269 Ga. 124, 126 (2) (498 SE2d 732) (1998). Because the question of whether a prospective juror is biased involves a credibility determination, "[t]he decision to strike a juror for cause lies within the sound discretion of the trial court[ ] and . . . will not be disturbed absent an abuse of discretion." (Citation omitted.) *Reddick v. State*, 264 Ga. App. 487, 495 (5) (a) (591 SE2d 392) (2003).

We find no abuse of discretion under the circumstances here. During voir dire, Panel Member 8 testified that he had a daughter who lived in the area where the shooting crime allegedly occurred and that, consequently, he had some general knowledge about the case. Panel Member 8 further testified that his brother was a detective, which he said might affect him in a case such as this one involving the shooting of a law enforcement officer. However, Panel Member 8 also testified without wavering that he had no preconceived opinion about who committed the crimes at issue here; that he knew nothing about the specific evidence involved in the case; that he had "no opinion . . . whatsoever" about Johnson; and that he could listen to the evidence fairly and impartially. Given this testimony, the trial court clearly was not required to excuse Panel Member 8 for cause. See *Fults v. State*, 274 Ga. 82, 84-85 (3) (548 SE2d 315) (2001) (prospective juror's pretrial exposure to general facts about the case not enough to require excusal for cause, when juror's testimony otherwise indicated she would decide the case based on evidence presented in court and that she had no fixed opinions about the case); *Brown v. State*, 243 Ga. App. 632, 633 (1) (534 SE2d 98) (2000) ("A juror who expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service.") (punctuation and footnotes omitted).

---

[3] Johnson also challenges the failure to excuse for cause Panel Member 49. But, Johnson fails to recognize that the trial court did in fact excuse for cause Panel Member 49.

We likewise find no abuse of discretion with respect to Panel Member 38, who testified that she knew the wife of the law enforcement officer who had been shot in this case. Specifically, Panel Member 38 related that the officer's wife used to work at a fabric store that the panel member often frequented because she is a seamstress. Yet, Panel Member 38 further testified that she was not personal friends with the officer's wife and had never discussed the shooting with her; that she did not "have any feelings one way or the other" as to whether Johnson was guilty; that she would acquit Johnson if the state failed to prove its case; and that she could be fair and impartial. This combined testimony did not mandate the excusal of Panel Member 38 for cause. See *Matthews v. State*, 268 Ga. 798, 799-800 (2) (493 SE2d 136) (1997) (fact that prospective jurors knew family members of victim not enough, standing alone, to require excusal for cause, when testimony otherwise demonstrated that they could judge the evidence fairly and impartially).

Finally, we find no abuse of discretion regarding Panel Member 42, who testified during voir dire that he had heard his friends in law enforcement speak generally about the case. Panel Member 42 noted that his friends had not told him anything about the specific evidence in the case and its connection to this particular defendant. He also "guess[ed]" that he could "possibly" decide the case based solely on the evidence presented, and he later reiterated that he believed he could be fair and impartial. As was true with Panel Members 8 and 38, the trial court was not required to excuse Panel Member 42 for cause in light of his combined testimony during voir dire. See *Fults*, 274 Ga. at 84-85 (3); *Holmes*, 269 Ga. at 126 (2) (noting that excusal for cause is not required simply because prospective juror says that she will "try" to remain impartial).

7. Johnson argues that the trial court erred by denying his motion under *Batson v. Kentucky*, 476 U. S. 79. In particular, Johnson argues that the state improperly struck two prospective black jurors who the state accused of sleeping during parts of voir dire, and that the trial court improperly relied on the testimony of a bailiff to verify the identity of one of the jurors who had been sleeping. We disagree and find no error.

Under *Batson*, "[i]f the defendant can establish a prima facie case of racial discrimination in the prosecutor's exercise of his peremptory challenges, the prosecutor must explain his exercise of peremptory challenges, and demonstrate that racially neutral criteria prompted the exercise of his peremptory challenges." *Gamble v. State*, 257 Ga. 325 (2) (357 SE2d 792) (1987). Pretermitting whether Johnson established a prima facie case of racial discrimination, we conclude that his *Batson* challenge fails because the state's reasons for the two

strikes at issue were racially neutral. "[I]n making the initial selection of the jurors to try a case, the inattentiveness of an apparently sleeping prospective juror is certainly a case-related, race-neutral reason for exercising a peremptory challenge." (Footnote omitted.) *Hood v. State*, 245 Ga. App. 391, 393 (4) (537 SE2d 788) (2000). See also *Trice v. State*, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995). Hence, the trial court did not err in finding that the state's reasons for the two strikes were race-neutral.

Nor did the trial court err by questioning the bailiff in order to verify that one of the jurors stricken by the state had been sleeping during voir dire. A trial court is entitled to consider and rely upon the testimony of a bailiff in evaluating the possible misconduct of empaneled jurors. See, e.g., *Vick v. State*, 166 Ga. App. 572, 574 (4) (305 SE2d 17) (1983). And, we see no logical reason why the same should not be true in the context of evaluating prospective jurors. Accordingly, we conclude that the trial court committed no error in relying upon the bailiff to support his finding that the prospective juror had been sleeping.

8. In his final enumeration of error, Johnson contends that he received ineffective assistance from his trial counsel. To establish an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), "[a] defendant must show that trial counsel performed deficiently and that the result of the trial would have been different but for the deficiency." (Footnote omitted.) *Fargason v. State*, 266 Ga. 463, 465 (4) (467 SE2d 551) (1996). "We need not address both prongs of this test if the showing on one prong is insufficient." (Citation omitted.) *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997).[4]

(a) Johnson contends that his trial counsel was ineffective by failing to secure his presence at the in-chambers conference where the mistrial issue was discussed and by moving for a mistrial. However, Johnson has failed to show how this alleged deficiency prejudiced him in any way. Apparently, Johnson's claim is that if his trial counsel had consulted with him during the in-chambers conference and then had declined to move for a mistrial, the trial court would have granted a mistrial sua sponte, and retrial subsequently would have been barred on double jeopardy grounds because there would have been no showing of manifest necessity. Clearly, "his claim in this regard is based on rank speculation, which is insufficient to establish an ineffective assistance claim." (Footnote omitted.) *Lawson v. State*, 280 Ga. App. 870, 874 (2) (f) (635 SE2d 259) (2006).

---

[4] Contrary to Johnson's assertion, we do not recognize the cumulative error doctrine. See *Cornelius v. State*, 273 Ga. App. 806, 808 (2) (616 SE2d 148) (2005).

(b) Johnson next asserts that his trial counsel was ineffective by failing to fully and adequately probe prospective jurors about potential racial bias. But, decisions concerning the scope of voir dire are presumed to be a matter of trial strategy, absent testimony from trial counsel explaining his rationale for the decisions at the hearing on the defendant's motion for new trial. *Morgan v. State*, 276 Ga. 72, 77 (9) (575 SE2d 468) (2003). See *Thomas v. State*, 273 Ga. App. 357, 362 (4) (b) (615 SE2d 196) (2005) (a trial attorney's decisions generally are presumed strategic, "absent testimony explaining the trial attorney's rationale") (footnote omitted). Here, Johnson's trial counsel did not testify at the hearing on the motion for new trial, so we must presume that decisions about what questions to ask during voir dire were strategic ones. See *Morgan*, 276 Ga. at 77 (9). "Trial strategy and tactics do not equate with ineffective assistance of counsel." (Citation and punctuation omitted.) *Powell v. State*, 198 Ga. App. 509, 511 (1) (402 SE2d 108) (1991). As such, Johnson has failed to establish the deficiency prong of his ineffective assistance claim. This is particularly true where, as here, the transcript reflects that trial counsel extensively voir dired prospective jurors on a wide range of issues in an effort to uncover potential bias. See *Solomon v. State*, 247 Ga. 27, 30 (1) (277 SE2d 1) (1980) (finding no ineffective assistance for failing to move to strike prospective juror, since "[t]rial counsel extensively voir dired prospective jurors and the range of voir dire examination and the use of peremptory strikes are matters that address themselves to trial tactics").

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 9, 2007.

*Gabrielle A. Pittman, Jennifer R. Burns*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney*, for appellee.