A05A0399. CRENSHAW v. THE STATE.
(612 SE2d 539)

MIKELL, Judge.

James Darnell Crenshaw was indicted for burglary, theft by receiving stolen property, and criminal trespass. The jury acquitted him of the theft by receiving stolen property charge, but convicted him of burglary. The trial court directed a verdict on the charge of criminal trespass and sentenced Crenshaw to 20 years, with 17 to be served in confinement and the balance on probation. Crenshaw appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence and the effectiveness of trial counsel. Finding no error, we affirm the conviction.

1. Crenshaw first contends that the evidence was insufficient to support his conviction.

---

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

Viewed in this light, the record shows that Kathleen Wrenn was pulling into the driveway of her home on June 20, 2002, when she noticed a Ford Explorer backed up to her garage. When Wrenn approached the vehicle she saw her Sony television in the back. Wrenn realized that she was "being robbed" and went to her neighbor, James Wohltman. Wohltman told Wrenn to go inside his house and call the police while he went over to the car to write down the tag number. When Wohltman noticed that the tag was missing, he took the keys out of the ignition. A short time later, while Wohltman and Wrenn were outside Wrenn's house talking to Officer Stephanie Williams of the Chatham County Police Department, a black male dressed in a long-sleeve black shirt and tan cargo shorts kicked out a window screen on Wrenn's house, jumped out the window, and began running toward the highway. Williams chased the man until he started to climb a fence. Williams radioed a description of the man, called for backup, and requested a check on the vehicle identification number. Williams was informed that the vehicle had been reported stolen from South Carolina.

Officer Lorraine Jackson, also of the Chatham County Police Department, was traveling on the highway when she heard Williams's call and saw a man run across the highway and into the woods. According to Jackson, the man was wearing a black sweatshirt and gray or beige pants. Jackson parked her vehicle in front of the woods and waited. Shortly after Williams called for tracking dogs, Jackson saw a man emerge from the woods. The man was wearing blue shorts and a white t-shirt. The man told Jackson that he had just left his girlfriend's house, but he could not provide a name or address for her. At trial, Jackson identified Crenshaw as the man who came out of the woods.

Jackson told Crenshaw that she was detaining him for the purpose of identification and asked him to get in the back of her patrol car. Jackson did not handcuff Crenshaw. Jackson drove Crenshaw to Wrenn's home, where Detective Fred Peche attempted to remove him

---

[1] (Citations and footnotes omitted.) *Sexton v. State*, 268 Ga. App. 736 (1) (603 SE2d 66) (2004).

from the patrol car to conduct a *Terry* search. According to Peche, Crenshaw refused to exit the patrol car, stating, "[f]uck, no, I'm not getting out of the vehicle." After removing Crenshaw from the patrol car, officers checked the back seat and discovered Wrenn's opal ring. During the *Terry* search, officers recovered about $370 in cash from Crenshaw's pockets and discovered that he was wearing two layers of clothing, including a pair of tan shorts. At trial, Wrenn testified that cash was missing from her home. Crenshaw was arrested and read his *Miranda* rights.

Officers inventoried the Ford Explorer and found property belonging to Wrenn and her husband, including the Sony television, a camcorder, luggage, t-shirts, soap, and a hat. At trial, Williams identified Crenshaw as the man she saw fleeing Wrenn's home. Neither Wohltman nor Wrenn could identify Crenshaw, but both testified that a black male jumped out of the window. Wohltman further testified that the man was wearing "dark clothing, like a dark short-sleeve type shirt or sweatshirt, and dark trousers."

Crenshaw specifically argues that the evidence was insufficient to support his conviction because (a) when apprehended by Jackson, he was wearing different clothing than the man who fled from Wrenn's home, and (b) he was handcuffed in the patrol car and, therefore, could not have left the ring in Jackson's back seat. We disagree.

(a) We reject Crenshaw's first contention for several reasons. First, the evidence shows that both Crenshaw and the man fleeing Wrenn's home were wearing tan shorts. Though Crenshaw emerged from the woods wearing blue shorts, Jackson and Peche both testified that Crenshaw was wearing tan shorts underneath the blue shorts. Second, Williams immediately identified Crenshaw as the man she saw jumping out of Wrenn's window. Third, Jackson testified that she saw a man fitting Crenshaw's description run across the highway, and she identified Crenshaw as the man who emerged from the woods. This evidence, viewed in a light to uphold the verdict of guilt, was more than sufficient to satisfy the standard required by *Jackson v. Virginia*.[2] Moreover, any discrepancies in the witnesses's descriptions of the fleeing suspect and Crenshaw at the time he was apprehended were ultimately issues for the jury to resolve.[3]

(b) Since the evidence demonstrates that Crenshaw was not handcuffed when Jackson placed him in her patrol car, his second

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See, e.g., *Jones v. State*, 220 Ga. App. 236, 237 (2) (469 SE2d 379) (1996) (discrepancies in victim's description of defendant are matters within the exclusive province of the jury); *Miller v. State*, 212 Ga. App. 193, 194 (2) (441 SE2d 443) (1994) (same).

contention fails. The jury was authorized to find that Crenshaw attempted to discard Wrenn's ring before officers discovered it on his person. Based on the evidence presented at trial, we conclude that a rational trier of fact could have found Crenshaw guilty of burglary beyond a reasonable doubt.[4]

2. In his second enumeration, Crenshaw argues that Williams and Jackson improperly commented on his exercise of his right to remain silent. We disagree.

The following colloquy took place between Williams and Crenshaw's defense counsel:

> Q: He only was put in your car for transportation purposes. Is that correct?
> A: Once they pulled him out to pat him down and to interview him, *he refused to talk*, then he was placed in my car.
> Q: When was the time that he was then taken out by the detectives for interrogation?
> THE COURT: Let me say this, I'm going to ask the jury to disregard the comment by the officer about the defendant's refusing to talk. That's nothing to be considered by you at all. Disregard that comment altogether. Go ahead.

(Emphasis supplied.)

With regard to Jackson, when questioned by the state about Crenshaw's refusal to get out of the patrol car, Jackson testified that, "[i]t was like he just kept saying somebody — *he wanted to see his lawyer or talk to his lawyers.*" (Emphasis supplied.) During cross-examination, Jackson read from her report that Crenshaw was "[t]hen placed under arrest and given his *Miranda* rights. *He clearly stated that he would not say another word to this officer . . . [w]hich he — he had stopped talking to me,* anyway." (Emphasis supplied.) Trial counsel did not object or move for a mistrial.

During the hearing on the motion for new trial, Crenshaw's trial counsel was asked why he did not move for a mistrial after Williams's statement. Counsel acknowledged missing the objection, explaining that "sometimes in the heat of trial, you know, the defense counsel can miss something." Counsel was not asked why he did not move for a mistrial after Jackson's statements.

Crenshaw's challenge has not been preserved for appeal because he failed to object to the testimony at trial.[5] Assuming error, however, for purposes of addressing his claim that his trial counsel rendered

---

[4] *Jackson,* supra.

[5] See *Allen v. State,* 272 Ga. 513, 515 (5) (530 SE2d 186) (2000).

ineffective assistance by failing to object to this testimony, we none-theless find that the comments do not constitute reversible error.

> Improper reference to a defendant's silence does not auto-matically require reversal; the error may be found to be harmless beyond a reasonable doubt. The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.[6]

Here, with respect to Williams's comment, the trial court promptly gave curative instructions on the right of the accused to remain silent and unambiguously instructed the jury to disregard the comment. Moreover, it appears from the record that the comment was inadvert-ent in that Williams was merely explaining the events leading up to Crenshaw being placed in her car for transport.

Similarly, with regard to Jackson's comments, we need not determine whether counsel performed deficiently, because we con-clude that, in all likelihood, the failure to object did not contribute to the outcome of the trial. As discussed in Division 1, the evidence was sufficient to convict Crenshaw of burglary: (1) Williams positively identified Crenshaw at the scene; (2) the suspect's clothing matched the clothing worn by Crenshaw when he was apprehended; (3) Crenshaw was apprehended in flight; and (4) officers recovered the victim's ring from the patrol car shortly after Crenshaw was removed from the car. Finally, we note that the state "made no attempt to capitalize on this issue during trial."[7]

3. Crenshaw next argues that trial counsel's failure to object to the officers' comments rendered his assistance ineffective. To prevail on a claim of ineffective assistance of counsel, Crenshaw must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense.[8] In light of our holding in Division 2 that admission of the testimony was harmless, trial counsel's failure to object to this testimony constitutes neither defi-cient performance nor prejudice to Crenshaw.[9]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[6] *Climpson v. State*, 253 Ga. App. 485, 488 (2) (559 SE2d 495) (2002), citing *Allen*, supra at 515-516 (5).

[7] (Punctuation omitted.) *Taylor v. State*, 253 Ga. App. 468, 471 (1) (559 SE2d 499) (2002), citing *Allen*, supra at 516 (5).

[8] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[9] See *Allen*, supra at 516 (6) (a).

DECIDED MARCH 21, 2005.

*William A. Dowell*, for appellant.

*Spencer Lawton, Jr., District Attorney, Melanie Higgins, Assistant District Attorney*, for appellee.