A05A2327. HAGGINS v. THE STATE.
(627 SE2d 448)

PHIPPS, Judge.

After being shot outside a Savannah nightclub, Aaron Anthony identified Keith Haggins as the shooter. A jury found Haggins guilty of aggravated assault and other crimes, and he appeals. He challenges the sufficiency of the evidence, pointing to Anthony's assertion as the trial date neared that he was no longer sure who had shot him. Haggins also contends that the trial court erred in admitting his statements to the police, that the prosecutor made an inflammatory remark during her opening statement, and that he received ineffective assistance of counsel. Because Haggins's arguments lack merit, we affirm.

On appeal, the defendant no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the verdict.[1] We do not weigh the evidence or determine the credibility of witnesses, and we uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

Anthony testified that he went to a nightclub called Frozen Paradise, where he "bumped into" Haggins, whom he knew "from seeing him on the streets." The two had an argument. When Anthony left the club later, he heard gunfire coming from a nearby alley. He saw two men in the alley, and the one firing shots was wearing a

---

[1] *Townsend v. State*, 256 Ga. App. 837, 838 (570 SE2d 47) (2002).
[2] Id.

brown jogging suit — the same clothing Haggins had worn inside the club. Anthony tried to run back to the club, but a bullet hit his knee and he collapsed.

Mitchell Johnston, who was then a patrol officer with the Savannah Police Department, testified that he was on duty that night near Frozen Paradise when he heard a series of gunshots. He saw two men run behind the club, one of whom was wearing all brown. The men split up and continued running in separate directions, and Johnston broadcast their directions of travel over the police radio.

Detective Robert Gavin, who was also on duty that night, testified that he heard the broadcast concerning the shooting suspects and drove to a corner that he anticipated the man in brown would pass, based on the directions he had heard. Gavin saw a man wearing brown — later identified as Haggins — emerge from a lane with another police officer chasing him. The officers tackled Haggins and arrested him.

During a pat-down search of Haggins, Gavin found a photograph in his pocket. Haggins told Gavin that he had paid $5 to have the photograph taken earlier that night. It showed Haggins wearing the same brown clothing he was then wearing, and Gavin recognized the background as a wall inside Frozen Paradise. Gavin returned the photograph, put Haggins in his police car, and drove him to the police barracks. On the way to the barracks, Gavin's police radio broadcast information pertaining to the search for the shooting suspects, and Haggins said, "[W]hat if I was with the shooter and I wasn't the shooter." Haggins told Gavin that his name was Keith Freeman.

At the barracks, Corporal Robert Larry interviewed Haggins, who said that his name was Keith Jefferson and that he also used the name Keith Freeman. Haggins signed his *Miranda* rights form with the name Keith Jefferson. Larry found the photograph in Haggins's pocket, and Haggins said, "I took it last Wednesday." Gavin, who overheard this statement, responded, "[Y]ou told me you took it tonight." Larry tested Haggins's hands for the presence of gunshot residue, and during the preparation for that testing, Haggins remarked that he had just had a birthday and had probably shot a lot of guns.

Sergeant Jonas Robinson testified that he was working off-duty as a security guard at Frozen Paradise on the night of the shooting. He heard gunshots, ran outside, and saw Anthony fall to the ground. Robinson asked Anthony which way the shooter had run, broadcast Anthony's response over his police radio, and ran after the men. When Robinson heard over his police radio that one suspect had been caught, he "backtrack[ed] . . . the way that he should have run according to the radio traffic" and found a gun on the ground.

Robinson then returned to the club, where emergency medical personnel were working on Anthony. He asked Anthony who had shot him, and Anthony said he knew the man only as "Red and Black or something to that effect." Corporal Eugene Johnson testified that he also spoke with Anthony shortly after the shooting and that Anthony said that a man named "Black" had shot him. Anthony testified that he remembered telling the security guard that "Keith" had shot him.

Sergeant David Gay visited Anthony in the hospital and showed him a photographic lineup featuring Haggins and five other men. Anthony identified Haggins from the lineup as the man who had shot him, and he said that he was "positive" about his selection.

Nearly four years after the shooting, while the charges against Haggins were pending, Anthony wrote a letter to the district attorney's office expressing fear for the safety of his family because Haggins was out on bond. In the letter, Anthony conveyed no uncertainty about the identity of the shooter. At trial, Anthony claimed that after writing the letter, he had heard rumors that someone other than Haggins "was saying they was the one shot me. And if I would come to court and testify against the wrong person, something might happen to me." According to Anthony, hearing these rumors prompted him to tell Haggins's attorney that he was uncertain about the identity of the shooter. At trial, Anthony testified that he did not know who had shot him. He also testified that he had appeared in court only in response to a subpoena and that he had not wanted to come.

Haggins testified that he went to Frozen Paradise that night with his friend Terry, also known as "Black." According to Haggins, he and Anthony had a "misunderstanding" at the club, after which he left. Outside the club, he saw Terry talking with some other people in an alley. When Anthony walked by, Terry shot him. Haggins claimed that he ran from the police because he had marijuana in his pocket.

Haggins was charged with aggravated assault, possession of a firearm during the commission of a crime, possession of a firearm by a convicted felon, obstruction, and forgery. The jury found him guilty on all counts.

1. Haggins challenges the sufficiency of the evidence to support the aggravated assault and firearm possession offenses. He argues that because Anthony began asserting years after the shooting that he was no longer certain who had shot him, the verdict was contrary to the evidence. The jury, however, was entitled to give greater weight to Anthony's positive contemporaneous identification of Haggins as the shooter and to conclude that Anthony's subsequent uncertainty

resulted from fear of retaliation by Haggins rather than from any real confusion about who shot him.[3]

Haggins also argues that evidence that testing revealed no gunshot residue on his hands shortly after his arrest required an acquittal. Sergeant Gay, however, testified that he regularly ordered gunshot residue tests on suspects in his cases, and none had ever come back positive. He stated: "I even handled suicide cases when we knew the person fired the gun. And I never received a positive result on any gunshot residue kit in a case that I was involved in." Based on this testimony, the jury was entitled to give little weight to the negative test result.

2. Haggins argues that the trial court should not have admitted certain statements that he made while in police custody.

(a) Haggins challenges the admission of his statement to Gavin, "[W]hat if I was with the shooter and I wasn't the shooter." According to Haggins, the trial court erroneously admitted this statement as part of the res gestae. The record shows, however, that the court ruled during a pretrial *Jackson-Denno* hearing that the statement was a voluntary "spontaneous utterance" rather than the product of custodial interrogation. The court's ruling was not based on a res gestae theory. In any event, we find no error in the ruling.

"The Fifth Amendment requires the exclusion of any statement made by an accused during custodial interrogation, unless he has been advised of his rights and has voluntarily waived those rights."[4] Gavin testified that Haggins made the statement shortly after his arrest while Gavin was transporting him to the police barracks, that he made it after hearing a police broadcast about the discovery of the gun used in the shooting, and that Gavin did not prompt him to speak. Thus, although Haggins was in custody when he made the statement, Gavin was not interrogating him or otherwise soliciting a response. A defendant's spontaneous, voluntary, unprompted utterance to a police officer is admissible against him at trial.[5]

(b) Haggins also challenges the admission of a videotape made at the police barracks while Larry was completing paperwork and swabbing his hands to test for gun residue. The videotape, which the trial court viewed at the *Jackson-Denno* hearing, showed Haggins making a number of comments to Larry. Haggins argues that because

---

[3] See *Allen v. State*, 243 Ga. App. 730, 731 (1) (534 SE2d 190) (2000); *Brown v. State*, 175 Ga. App. 246, 247 (1) (333 SE2d 124) (1985).

[4] *Franks v. State*, 268 Ga. 238, 239 (486 SE2d 594) (1997) (citation omitted).

[5] See *Jackson v. State*, 270 Ga. 494, 497 (6) (512 SE2d 241) (1999); *Zackery v. State*, 262 Ga. App. 646, 649-650 (2) (586 SE2d 346) (2003); *Pierce v. State*, 255 Ga. App. 194, 196 (2) (564 SE2d 790) (2002).

he had invoked his right to remain silent before making the comments, they should have been suppressed. We disagree.

The record shows that Larry asked Haggins only for basic biographical data and whether he was right or left-handed, so that Larry would know which hand to uncuff to permit Haggins to sign paperwork. These questions were related to legitimate administrative needs and therefore fell within the well-recognized "booking exception" to the *Miranda* rule.[6] All further discussion between Larry and Haggins — including Haggins's volunteered statement that he might have fired guns on his birthday — was initiated by Haggins, was not the product of custodial interrogation, and therefore was admissible.[7]

3. In her opening statement, the prosecutor told the jury, ". . . I'm going to ask you to hold [Haggins] accountable and to send a message that street justice —." Defense counsel objected, and the court instructed the jury that an opening statement is not evidence, but merely what the lawyers expect the evidence to be. Defense counsel did not renew his objection after this instruction. Haggins now claims that the prosecutor's comment "should have been excluded." But Haggins never moved for a mistrial — either before or after the prosecutor's comment — and he never objected to the court's curative instruction. Therefore, he has waived the issue on appeal.[8]

Even if he had not waived the issue, the prosecutor's comment was permissible. "It is not improper for a prosecutor to appeal to the jury to convict for the safety of the community, or to stress the need for enforcement of the laws and to impress on the jury its responsibility in that regard."[9]

4. Haggins argues that the trial court improperly allowed the prosecutor to refresh Anthony's recollection with the letter he wrote to the district attorney's office expressing fear of Haggins. He contends that the prosecutor's use of the letter was improper because the state had not provided the letter to the defense as part of its reciprocal discovery obligations. We find no error.

Under OCGA § 24-9-69, "[a] witness may refresh and assist his memory by the use of *any* written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed. . . ."[10] A criminal defendant has the right, upon request, to

---

[6] See *Franks*, supra at 239-240.

[7] See id.; *Zubiadul v. State*, 193 Ga. App. 235, 236 (387 SE2d 431) (1989).

[8] See *Garcia v. State*, 271 Ga. App. 794, 796-797 (611 SE2d 92) (2005).

[9] *Jowers v. State*, 272 Ga. App. 614, 617 (2) (613 SE2d 14) (2005) (citation and punctuation omitted) (approving prosecutor's argument to jury to "send a message to the people in Columbus, Georgia that we're not going to tolerate the brutal shootings").

[10] (Emphasis supplied.)

examine documents used by witnesses to refresh their recollection.[11] In this case, defense counsel asked to see the letter before the prosecutor handed it to Anthony, and the prosecutor granted that request. After previewing the letter, defense counsel did not object to Anthony using it to refresh his memory. The letter was neither admitted into evidence nor read to the jury. Under these circumstances, we find no error.

5. Haggins claims that the trial court erred by not allowing him to show that crack cocaine was found inside the ambulance that transported Anthony to the hospital. This argument is patently meritless, as one of the police officers testified that crack cocaine was found in the ambulance. Moreover, Haggins was permitted to impeach Anthony with certified copies of his prior felony convictions, including two for drug possession.

6. Haggins contends that the court erred by failing to grant a mistrial when a witness for the state improperly commented on his failure to make a statement to the police. While questioning Larry, the prosecutor asked about the photograph he had collected from Haggins's pocket. The following exchange occurred:

> [PROSECUTOR]: . . . [Y]ou've indicated [the photograph] was significant to you because it shows the clothing that [Haggins] had on that night.
> [LARRY]: That's correct.
> [PROSECUTOR]: And it also puts him at a location.
> [LARRY]: That's correct. *Because he did not give a statement.* If . . . he decided to say well, I was never there, we have the background . . . here which was inside — excuse me, which he took a photo of inside of the club that night.[12]

Defense counsel objected and moved for a mistrial, but the court denied the motion.

"A comment upon a defendant's silence or failure to come forward is far more prejudicial than probative, and therefore will not be allowed. . . ."[13] Nevertheless, "to reverse a conviction, the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury."[14] In this case, there

[11] *Johnson v. State*, 259 Ga. 403, 405 (2) (383 SE2d 118) (1989).

[12] (Emphasis supplied.)

[13] *Wallace v. State*, 272 Ga. 501, 503 (2) (530 SE2d 721) (2000) (punctuation and footnote omitted).

[14] *Sanders v. State*, 230 Ga. App. 176, 177 (3) (495 SE2d 653) (1998) (citation and punctuation omitted).

was only one reference to Haggins's election not to make a statement, the prosecutor did not solicit the reference, and she neither mentioned Haggins's silence nor sought to draw any prejudicial inferences from it. Thus, "there was no focus on [Haggins's] silence sufficient to constitute prejudicial error."[15]

7. Finally, Haggins contends that his trial counsel was ineffective in several respects. To prove ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defense that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[16] After hearing the matter, the trial court concluded that Haggins had failed to make this showing, and we agree.

(a) Haggins complains that his lawyer failed to visit or photograph the crime scene. But defense counsel testified at the motion for new trial hearing that he went to the crime scene several times, that photographs of the scene already had been taken by the police, and that he was unaware of "any photos or any angles . . . that would have been beneficial to Mr. Haggins." Thus, the trial court was presented with evidence from which it could conclude that defense counsel's decision not to obtain additional crime scene photographs was "due to a choice of trial strategy, not a result of inadequate preparation or presentation."[17]

(b) Haggins asserts that defense counsel should have hired an investigator, but he does not speculate about — much less point to any evidence of — any exculpatory material that an investigator might have uncovered. Accordingly, counsel's failure to hire an investigator cannot be considered ineffective assistance.[18]

(c) Finally, Haggins argues that when the prosecutor refreshed Anthony's recollection with his letter to the district attorney's office, defense counsel should have discussed the letter with him and sought a continuance. But as discussed in Division 4, the prosecutor's use of the letter to refresh Anthony's recollection was proper, and defense counsel was permitted to review the letter beforehand. Thus, we

---

[15] *Clark v. State*, 191 Ga. App. 386 (2) (381 SE2d 763) (1989) (punctuation omitted) (physical precedent only), citing *Evans v. State*, 167 Ga. App. 396, 398-399 (2) (306 SE2d 691) (1983), overruled on other grounds, *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984); compare *Gordon v. State*, 250 Ga. App. 80, 83 (550 SE2d 131) (2001) (reversing conviction where prosecutor repeatedly stressed defendant's failure to explain events leading to his arrest and court told jury that prosecutor had a right to question defendant about his failure to make a statement).

[16] *Hampton v. State*, 279 Ga. 625, 626 (619 SE2d 616) (2005).

[17] *Boyd v. State*, 275 Ga. 772, 776 (3) (573 SE2d 52) (2002).

[18] See *Hampton*, supra at 628 (5); *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

discern no basis upon which the trial court might have granted a continuance. Moreover, Haggins fails to explain how a continuance would have aided his defense.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 24, 2006.

*Orin L. Alexis*, for appellant.
*Spencer Lawton, Jr., District Attorney, Isabel M. Pauley, Assistant District Attorney*, for appellee.