## A06A1676. WRIGHT v. THE STATE.
### (639 SE2d 581)

RUFFIN, Chief Judge.

A jury found Bambi Wright guilty of armed robbery, two counts of aggravated assault, kidnapping with bodily injury, and two counts of possessing a knife during the commission of a crime. The trial court denied her motion for new trial. Wright appeals, challenging the sufficiency of the evidence and contending that the trial court erred in charging the jury and in refusing to grant a mistrial. Finding no error, we affirm.

On appeal from a criminal conviction, the appellant is no longer presumed innocent, and we view the evidence in a light most favorable to the verdict.[1] We neither weigh the evidence nor evaluate the credibility of witnesses.[2] Here, the evidence shows that Wright and Ferris Grady were romantically involved. On March 9, 2002, they had

---

[1] See *Isaac v. State*, 275 Ga. App. 254 (620 SE2d 483) (2005).

[2] See id.

spent much of the day asking people for money in downtown Athens, but without any success. That evening, Vivian LeBlanc withdrew $30 from her bank's automated teller machine (ATM) in downtown Athens. As LeBlanc returned to her vehicle in a nearby parking deck, Wright approached her and asked for a ride. LeBlanc agreed, and Wright entered the front seat of LeBlanc's vehicle on the passenger side. As LeBlanc drove through the parking deck, Wright said "he needs a ride, too," and Grady entered the back seat of the vehicle.

Grady gave LeBlanc directions, and she began driving. Grady then held a knife to LeBlanc's throat and asked for her wallet and ATM card. Wright took the ATM card from LeBlanc. LeBlanc was instructed to drive to a dead-end street. Both Wright and Grady repeatedly requested LeBlanc's personal identification number (PIN) for her ATM card, which she gave them. Then, while Grady removed a piece of rope from the trunk of LeBlanc's vehicle, Wright pointed the knife at LeBlanc's neck. Wright cut the rope, and Grady tied up LeBlanc and gagged her. After they removed LeBlanc's shoes and glasses and covered her head, they left, telling LeBlanc that they would return.

Wright and Grady went to LeBlanc's bank and, after several attempts to withdraw money from her account from the ATM, they withdrew $150. Their actions were recorded by the bank's surveillance cameras. Wright and Grady then went to a bar and drank with another couple. Grady paid the bartender with cash obtained from LeBlanc's account, and the two couples then began walking toward LeBlanc's vehicle. Wright admitted at trial that she knew Grady's intent was to return to the vehicle and "dump [LeBlanc] in the river."

Meanwhile, LeBlanc freed herself and reported the attack to police. Based on LeBlanc's description of her attackers, police officers stopped Wright, Grady, and the couple accompanying them. Grady had a knife and $80 in cash. Wright had $85 in cash, an ATM receipt from LeBlanc's bank, and LeBlanc's car keys. LeBlanc was brought to the scene, and she identified Wright as one of her attackers.

1. Wright contends that the evidence at trial was insufficient to support her conviction of the crimes charged. She argues that the facts show that she "merely acquiesced in the criminal activities of Ferris Grady." But there was ample evidence from which a jury could conclude that Wright participated in the crimes with which she was charged.[3] LeBlanc testified that Wright asked for her PIN for her ATM card "several times," held the knife to her neck, and cut the rope used to tie up LeBlanc. The jury saw pictures of Wright withdrawing

[3] See *Odom v. State*, 279 Ga. 599, 600 (619 SE2d 636) (2005); *Warren v. State*, 233 Ga. App. 699-700 (1) (505 SE2d 777) (1998).

money from LeBlanc's account, and, at the time of her arrest, Wright had cash, an ATM receipt, and LeBlanc's car keys. This was a sufficient basis for a rational trier of fact to conclude that Wright was guilty beyond a reasonable doubt of the crimes charged.[4]

2. Wright alleges that reversible error occurred when a police officer testified that she declined to make a statement at the time of her arrest. At trial, Lieutenant Fedrick of the Athens-Clarke County police testified about LeBlanc's identification of Wright on the evening of the incident. The State asked Fedrick, "What did you do after that?" Fedrick responded:

> After that particular time I went up to . . . Ms. Wright and I read her her rights and told her I need to discuss this with her. She stated she understood her rights but stated that she did not want to make a statement at this particular —

Fedrick was stopped mid-sentence. The trial court excused the jury and Wright's counsel moved for a mistrial. The trial court denied the motion for a mistrial and gave the jury a curative instruction. The jurors were polled and all agreed that they could disregard Fedrick's comment.

It is improper for a trial court to allow testimony about a defendant's silence following arrest.[5] Nonetheless,

> not every reference to a defendant's invocation of the right to remain silent entitles a defendant to a reversal. Instead, the error may be found to be harmless beyond a reasonable doubt. The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.[6]

In order to reverse a conviction on this ground, "the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury."[7]

Wright argues that she was prejudiced by the comment on her silence following arrest because it might appear to conflict with her

---

[4] See *Mizell v. State*, 266 Ga. App. 833, 835 (1) (598 SE2d 100) (2004); *Drummer v. State*, 264 Ga. App. 617, 619 (1) (591 SE2d 481) (2003).

[5] See *Haggins v. State*, 277 Ga. App. 742, 747 (6) (627 SE2d 448) (2006).

[6] (Citation omitted.) *Kania v. State*, 280 Ga. App. 356, 358-359 (2) (634 SE2d 146) (2006).

[7] (Punctuation omitted.) *Haggins*, supra.

testimony at trial that she was acting out of fear of Grady. However, the comment on Wright's silence was not solicited by the State, but appears to have been inadvertent.[8] The trial court promptly instructed the jury to completely disregard the statement.[9] The State did not subsequently refer to Wright's silence or seek to draw any prejudicial inferences from it.[10] Under these circumstances, " 'there was no focus on [Wright's] silence sufficient to constitute prejudicial error.' "[11]

3. Finally, Wright asserts that the jury instruction given as to kidnapping was erroneous because "it stated that the slightest movement of the victim was sufficient to prove asportation," which is the suggested pattern jury instruction on kidnapping.[12] We have recently held that this jury charge "accurately state[s] the law with regard to the asportation element of kidnapping."[13] Thus, we find no error.[14]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 30, 2006.

*Gordon & Brown, Gerald W. Brown,* for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney,* for appellee.

---

[8] See *Crenshaw v. State,* 272 Ga. App. 350, 353-354 (2) (612 SE2d 539) (2005) (finding no reversible error when officer's testimony that defendant "refused to talk" "was inadvertent in that [the officer] was merely explaining the events leading up to [the defendant] being placed in [the vehicle] for transport").

[9] See *Lewis v. State,* 279 Ga. 69, 74 (6) (608 SE2d 602) (2005); *Ledford v. State,* 221 Ga. App. 238, 242 (4) (470 SE2d 796) (1996) (no abuse of discretion in trial court's denial of motion for mistrial when it "promptly gave curative instructions on the right of the accused to remain silent and unambiguously instructed the jury to disregard the comments and not to draw any adverse inference from the fact that the accused has asserted his right to remain silent").

[10] See *Kania,* supra at 359 (2).

[11] See *Haggins,* supra at 748.

[12] See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, § 2.09.10, p. 85 (3d ed. 2003).

[13] *Quintero v. State,* 279 Ga. App. 497, 498 (2) (631 SE2d 723) (2006).

[14] See id.