A07A2163. LENON v. THE STATE.
(660 SE2d 16)

JOHNSON, Presiding Judge.

A jury found Jason Lenon guilty of armed robbery, aggravated assault, four counts of possession of a firearm during the commission of a crime, and two counts of kidnapping. Lenon appeals, alleging insufficiency of the evidence, improper sentencing, and the introduction of improper evidence at trial. We find no error and affirm Lenon's convictions. However, because we find that some of Lenon's convictions must be merged as a matter of law or fact, we vacate the sentences as to those merged convictions and remand this case for resentencing with direction.

1. Lenon contends the evidence is insufficient to support his convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines the sufficiency of the evidence and does not weigh the evidence or determine the credibility of the witnesses.[1] Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court.[2] As long as there is some evidence, even though contradicted, to

---

[1] *Crenshaw v. State*, 272 Ga. App. 350, 351 (1) (612 SE2d 539) (2005).

[2] *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000).

support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in this light, the evidence shows that on November 11, 2004, Lenon entered Speedee Cash and told the two employees that he wanted to talk to someone about "doing a title pawn." As one of the employees approached her desk, Lenon pulled out a gun, causing the employee to scream. Lenon moved toward both employees and stated that he wanted the money and the camera tape. The employees were unable to provide the camera tape because only the home office had access to the tape, but they jointly removed the cash from the register and gave it to Lenon. They handed the cash to Lenon because he had a gun pointed at them. After receiving the money, Lenon ordered the employees to go to the back office, and they obeyed his command.

When the employees heard the door beep, signaling Lenon had left the business, they left the back room and observed Lenon in his car waiting for traffic to clear so he could pull out of the parking spot. The employees called the police and informed them that Lenon had just left the business in a small, bright green, four-door car, which resembled a Geo Prism, with a Florida license plate. They also described his appearance and told the police which direction Lenon had traveled. An officer heard the radio call describing the suspect and the vehicle and headed toward Speedee Cash. On his way, he observed a suspect and vehicle matching the description, radioed dispatch to confirm the description, and received confirmation of the description. The officer then pulled behind the vehicle in the center turn lane at a red light, activated his lights, exited his marked patrol unit, and approached the vehicle with his firearm drawn. The officer, who was wearing his police uniform, called out to the driver to "show me your hands" several times, but the driver did not comply. Instead, the driver "took off" through the red light.

The officer returned to his patrol unit and began to pursue the vehicle. The vehicle drove at a high rate of speed through several intersections, ultimately crashing into a utility pole. The suspect got out of the vehicle, looked at the officer, who had ordered him to stop, and then began running away from the officer. The suspect was apprehended and arrested. The officer positively identified Lenon in court as the suspect he arrested. The officer further testified in court that Lenon had $281 in his right front pocket when he was arrested.

Approximately fifteen-twenty minutes after the robbery, the two employees received information that the police believed they had the armed robber. The employees drove to where the suspect was being held. One of the employees positively identified Lenon as the person

---

[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

who had robbed Speedee Cash and positively identified Lenon's vehicle as the same car the robber was in when he left Speedee Cash. The employee had no doubt that the person in custody was the same person who had minutes earlier pointed the gun at her, and she positively identified Lenon in court as the person who had robbed Speedee Cash.

The second employee also positively identified Lenon both on the scene and in court as the same man that had robbed Speedee Cash. She based this identification on the suspect's face, hair, and clothing. According to this employee, she would have been able to pick out Lenon even if he had been in a lineup with ten other people. She also testified that she would have told the officers at the scene if the suspect had not been the one to rob Speedee Cash because she "would never want to send an innocent man to jail." This employee also identified Lenon's car as the vehicle the suspect was in when he left Speedee Cash.

Contrary to Lenon's contention, the evidence was sufficient to support the jury's verdict. OCGA § 16-8-41 (a) defines armed robbery: "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon. . . ." A person commits the offense of aggravated assault when he commits an act which places another in reasonable apprehension of immediately receiving a violent injury, and commits this act with intent to rob with a deadly weapon.[4] Kidnapping is defined as abducting a person without lawful authority and holding the person against her will.[5] Asportation of the person can be slight, and ordering a person by gunpoint to move to another area is considered sufficient asportation.[6] OCGA § 16-11-106 (b) (1) makes it a crime for any person to have a firearm during the commission of a crime against a person. The facts in the present case are sufficient for a rational trier of fact to find Lenon guilty of these crimes.[7]

2. Lenon contends his convictions must be reversed because a police officer and the prosecutor improperly commented on Lenon's decision not to testify or right to remain silent. We find no reversible error.

The record shows that during closing argument the prosecutor stated: "That's the evidence. It's unrebutted, it's uncontradicted. . . ." The prosecutor later told the jury: "The evidence is unrebutted and

---

[4] OCGA §§ 16-5-20 (a) (2); 16-5-21 (a).

[5] OCGA § 16-5-40 (a).

[6] See *Waters v. State*, 248 Ga. 355, 367 (9) (283 SE2d 238) (1981).

[7] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

uncontradicted. . . ." These statements do not constitute improper comments during closing argument and did not shift the burden of proof in this case.

Although a prosecutor may not comment on a defendant's failure to testify, it is not error nor is it improper for a prosecutor to reflect upon the failure of the defense to present any evidence to rebut the proof adduced by the state.[8] Here, the prosecutor's comments were not directed toward Lenon's failure to testify, but rather toward the defense's failure to rebut the state's evidence. Lenon's enumeration of error on this ground lacks merit.

Likewise, the police officer's testimony did not improperly comment on Lenon's right to remain silent. When asked on cross-examination by Lenon's defense counsel whether he did a voice analysis of the video of the robbery, the police officer testified, "No, sir, because your client invoked, so therefore I can't use — you can't use stuff like that." "Improper reference to a defendant's silence does not automatically require reversal."[9] Here, after reviewing the officer's comment in the context of the trial as a whole, we find no reasonable probability that the officer's vague comment on Lenon's invocation of his right to remain silent, in response to defense counsel's interrogation, had any effect on the jury's verdict.[10] There was only one brief reference to Lenon's assertion of his right to remain silent during the course of the trial, and it did not occur in response to questions posed by the state on direct or cross-examination. Rather, in this case a police officer gratuitously offered a nonresponsive comment during his cross-examination by defense counsel, and defense counsel quickly moved past the comment and brought the focus back to the facts. In addition, the state did not draw attention to the officer's comment or encourage the jury to infer guilt from Lenon's silence. For these reasons, we conclude that the officer's comment did not constitute reversible error.

3. Lenon contends his convictions must be reversed because the trial court permitted evidence of impermissibly suggestive showup procedures and tainted in-court identifications. Specifically, he argues that the employees' identification evidence should have been excluded because the employees were informed that the suspect was apprehended and identified Lenon while he was handcuffed and seated in the back of the police car. According to Lenon, not only were

---

[8] See *Martin v. State*, 193 Ga. App. 581, 585 (4) (388 SE2d 420) (1989).

[9] (Citations and punctuation omitted.) *Hines v. State*, 277 Ga. App. 404, 408-409 (2) (626 SE2d 601) (2006); *Crenshaw*, supra at 354 (2).

[10] See *Hines*, supra at 409.

the in-custody identifications suggestive, but they tainted the employees' in-court identifications. We find no error.

While we have sharply criticized one-on-one showups as inherently suggestive, this Court had consistently held that such identifications need not be excluded as long as they are reliable notwithstanding any suggestive procedure under all the circumstances.[11] Factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[12]

In the present case, both employees saw Lenon when he entered the store, viewed him during the commission of the crimes, and saw Lenon and the vehicle he was driving after he left the store. The employees described Lenon, including his skin color, hair and clothing, and the vehicle he was driving to police. In addition, both employees were adamant that the suspect sitting in the police car was the same person who had robbed them, and one of the employees even made the comment that she would have informed police if he was not the person who robbed them because she did not want an innocent man to go to jail. The employee further stated that she would have been able to pick out Lenon even if he had been in a lineup with ten other people. Moreover, only 15-20 minutes had passed between the crime and the identification. Under the circumstances, the identifications were reliable, and the trial court's admission of the identification evidence was not clearly erroneous.

4. Lenon contends his four convictions for possession of a firearm during the commission of a crime are duplicative and must be merged. The state agrees. The Supreme Court of Georgia has held that "where multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree."[13] Here, Lenon was convicted of aggravated assault, armed robbery and two counts of kidnapping, but each crime occurred within the course of one continuous crime spree against only two victims. The trial court is hereby directed to merge two of the four firearm possession offenses. One of these merged offenses should be Lenon's possession of a firearm

---

[11] See *Horne v. State*, 260 Ga. App. 640, 643 (4) (580 SE2d 644) (2003).
[12] Id.
[13] *State v. Marlowe*, 277 Ga. 383, 386 (2) (c) (589 SE2d 69) (2003).

during the commission of aggravated assault (Count 4) for the reasons expressed in Division 6 of this opinion.

5. Lenon argues his conviction for aggravated assault must be merged with his convictions for armed robbery and kidnapping. While the offense of aggravated assault does not merge as a matter of law with the offenses of armed robbery and kidnapping, the offenses may merge as a matter of fact if the same set of facts are used to prove the offenses.[14] Here, Lenon properly argues that his aggravated assault conviction should be merged with his armed robbery and kidnapping convictions.

While the state objects to the merger and cites factual evidence supporting its argument that the aggravated assault occurred prior to the armed robbery and kidnapping, when Lenon pointed his gun at the first employee who approached him when he walked in the store, the indictment does not allege aggravated assault against this first employee. Count 3 of the indictment alleges aggravated assault against the second employee, who remained on the telephone with her husband when Lenon entered the store. The state does not argue or present any evidence showing separate underlying facts used to prove aggravated assault and either armed robbery or kidnapping against the second employee in this case. Thus the trial court erred in failing to merge Lenon's conviction for aggravated assault with his convictions for armed robbery and kidnapping.[15] The trial court is hereby directed to merge Lenon's conviction for aggravated assault into either the armed robbery or kidnapping convictions. The conviction for and sentence imposed on the aggravated assault count is hereby vacated.[16]

6. Based on our finding in Division 5, we agree with Lenon's enumeration of error asserting that his conviction for possession of a firearm during the commission of aggravated assault must merge because his aggravated assault conviction merges with his kidnapping and armed robbery convictions. The trial court is directed to merge the possession of a firearm during the commission of aggravated assault conviction as one of the possession convictions merged pursuant to our directive in Division 4.

*Judgment affirmed in part and vacated in part and case remanded with direction. Phipps and Mikell, JJ., concur.*

---

[14] See *Hill v. State*, 279 Ga. App. 666, 668-669 (2) (632 SE2d 443) (2006); *Rooks v. State*, 238 Ga. App. 177, 179 (2) (518 SE2d 179) (1999).

[15] See *Young v. State*, 272 Ga. App. 304, 307-309 (2) (612 SE2d 118) (2005).

[16] See *Bailey v. State*, 269 Ga. App. 262, 265 (4) (603 SE2d 786) (2004).

DECIDED MARCH 4, 2008 —
RECONSIDERATION DENIED MARCH 27, 2008.

*John G. Edwards*, for appellant.

*J. David Miller, District Attorney, Bradfield M. Shealy, Robert L. Moore, Jr., Assistant District Attorneys*, for appellee.