**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 16, 2015**

# In the Court of Appeals of Georgia

A14A1431. PRESSLEY v. THE STATE.

PHIPPS, Chief Judge.

Darrin Pressley appeals his convictions for armed robbery, criminal trespass, and two counts of aggravated assault. He contends that he is entitled to a new trial because: (1) his "right to due process was violated, and the trial court erred by allowing the State to bolster one of its complaining witnesses"; and (2) the state made an improper comment in its closing argument. We affirm.

The evidence, viewed in the light most favorable to the verdict, showed the following. Pressley and Prescilla Smith had dated each other for about four years. During some of that time, Pressley resided with Smith in her home. After their "exclusive relationship" had ended, Pressley continued to be involved in Smith's life because he was "like a father" to Smith's children, and he would "still get the kids,

still see the kids"; but he no longer lived with Smith. Smith had the door locks changed.

On the weekend of July 4, 2010, approximately one year after Smith's and Pressley's dating relationship had ended, Smith met Quincy Bozeman in New Orleans at a festival. Bozeman resided in California. After the festival, Smith and Bozeman frequently spoke with each other by phone, and later that month, Bozeman traveled to Georgia to visit Smith; while in Georgia, he stayed at Smith's residence. On the night of July 31, as Smith and Bozeman were asleep in Smith's bed, they "woke up to [Pressley] in the house," pointing a firearm at them and threatening to kill them.

Pressley questioned Smith and Bozeman about their relationship. Eventually, Pressley retrieved Bozeman's clothes from Smith's side of the bed, threw them at Bozeman, and ordered Bozeman to leave. Bozeman had about $350 in the pocket of his pants; Pressley took the money as well as Bozeman's cell phone. After Bozeman put on his clothes, Pressley escorted him by gunpoint to his (Bozeman's) rental vehicle, which was parked in Smith's garage. Bozeman entered the vehicle and drove away, leaving Smith alone in the house with Pressley. Pressley ordered Smith upstairs, where he asked her more questions about her relationship with Bozeman. Pressley later left the house. Smith got dressed and went to a friend's house.

2

1. Pressley contends that he is entitled to a new trial because his "right to due process was violated, and the trial court erred by allowing the State to bolster one of its complaining witnesses."

At trial, Bozeman testified that Pressley held him and Smith at gunpoint, threatened to kill him, and robbed him of his money and cell phone. Near the end of the state's direct examination of Bozeman, the prosecutor asked Bozeman, "have you been looking forward to coming and testifying?" Before Bozeman answered the question, Pressley's trial counsel objected on the basis of relevance. The trial court sustained the objection. The prosecutor then asked Bozeman, "Have you ever asked that my office dismiss these charges?" Before Bozeman answered that question, Pressley's trial counsel objected on the basis of relevance and bolstering. The trial court sustained the objection. The prosecutor asked Bozeman a few more questions, and ended the direct examination. Pressley's trial attorney then began his cross-examination of Bozeman with an inquiry about whether the state had "paid to fly [him]" to Georgia for the trial, and about whether the state was paying for his hotel room while he was in Georgia. Bozeman answered "Yes" to both questions.

On redirect examination, the state asked Bozeman whether he was testifying willingly, and whether he had participated in and supported the state's prosecution

3

of Pressley. Trial counsel objected, stating "[a]gain, Your Honor, this goes back to my objection before. This goes to bolstering." The state replied that defense counsel had opened the door to the state's inquiry when, during cross-examination, defense counsel asked Bozeman whether the state was paying for Bozeman's travel expenses and hotel accommodations while he was in Georgia. The state argued that defense counsel's questions and Bozeman's responses thereto inferred or suggested that the state was "somehow encouraging or buying [Bozeman's] testimony," and that the state was thus entitled to ask Bozeman whether he was testifying willingly. The trial court permitted the question, stating "It seems to me a proper scope of redirect." Thereupon, Bozeman affirmed that he was a willing participant in the state's prosecution of Pressley, and that he had cooperated with police and with the prosecutor's office for the entire two years that had passed between the incident and the trial.

(a) *No due process violation*. Pressley asserts that the purpose of the questions he had posed to Bozeman on cross-examination about the state paying Bozeman's travel expenses and hotel accommodations was to "undo the improper questioning by the State," as "[i]t would certainly violate a defendant's right to a fair trial if a prosecutor was allowed to ask improper questions and leave the jury with false

4

impressions." But "[w]here an objected-to question is not answered by the witness, there is no harmful error."[1] In this case, "[s]ince [neither challenged question posed by the state] was . . . answered by the witness, the error, if any, was harmless."[2]

(b) *No improper bolstering.* "Normally, a party may not bolster the veracity of its own witness until the witness has been impeached by the adverse party. Evidence which goes to a witness's credibility is not relevant unless produced to attack the credibility of a witness, or to rehabilitate credibility when it has been attacked."[3] "A witness's veracity is placed in issue . . . if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[4] Pressley's introduction of evidence, during his cross-examination of Bozeman, that the state had paid for Bozeman's travel expenses and hotel accommodations was a

---

[1] *Hardwick v. State*, 250 Ga. App. 390, 393 (3) (551 SE2d 789) (2001) (citations and punctuation omitted).

[2] *Arnold v. State*, 236 Ga. 534, 536 (2) (224 SE2d 386) (1976) (citation omitted). See generally *Jackson v. State*, 233 Ga. 529, 531 (4) (212 SE2d 366) (1975); *Watkins v. State*, 285 Ga. 107, 110-111 (4) (674 SE2d 275) (2009); *Barrow v. State*, 269 Ga. App. 635, 638 (4) (605 SE2d 67) (2004).

[3] *Hall v. State*, 255 Ga. App. 631, 632 (1) (566 SE2d 374) (2002) (citation, punctuation, footnote, and emphasis omitted).

[4] *Thompson v. State*, 281 Ga. App. 627, 631 (3) (636 SE2d 779) (2006) (citation and punctuation omitted).

charge that Bozeman had been improperly influenced or improperly motivated to testify in favor of the prosecution, and the state was entitled to rehabilitate Bozeman's credibility by introducing evidence that Bozeman was testifying willingly.[5]

2. Pressley contends that he is entitled to a new trial because the state made an improper comment in its closing argument.

During the state's closing argument, the following occurred as the state summarized Bozeman's demeanor while he was testifying:

> [PROSECUTOR]: He came to you. You got to see him. And he was emotional, and it was hard for him. But then, on the other hand, he was also happy to tell you his story because he believes and *I tend to agree* –
>
> [DEFENSE ATTORNEY]: Objection, Your Honor. What the prosecutor thinks, what the prosecutor believes is not relevant in closing argument.
> THE COURT: Okay. Rephrase.
> [PROSECUTOR]: He believes that Darrin Pressley should pay for what he did. And he should. He should pay for what he did. So as you're seeking the truth while you're in the jury room, I submit to you that it's not going to be difficult to determine what the truth is. It will be a hard

---

[5] See generally *Nance v. State*, 272 Ga. 217, 221-222 (5) (526 SE2d 560) (2000); *Jones v. State*, 318 Ga. App. 342, 347 (3) (a) (ii) ( (733 SE2d 400) (2012) ("Although a party normally may not bolster the veracity of an unimpeached witness, the State may rehabilitate a witness whose credibility has been attacked.") (citations and punctuation omitted).

decision for you because this is very serious. We're talking about not only that man's life, but the lives of Prescilla Smith, the lives of her children, the lives [sic] of Quincy Bozeman. *It's going to be a hard decision, it's going to be a hard process but you know what the truth is.*[6]

Pressley challenges the italicized remark, contending that it constituted an impermissible comment on Bozeman's credibility.[7]

But the prosecutor did not finish her statement before defense counsel objected, and Bozeman has not identified any specific statement which even arguably constituted a comment by the prosecutor as to her personal opinion of Bozeman's veracity.[8] The statements that the prosecutor made after the trial court ordered her to "[r]ephrase" the remark, reflect that she was going to argue that the evidence led to

---

[6] (Emphasis supplied.)

[7] *Metts v. State*, 270 Ga. 481, 484 (4) (1999) ("It is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness; however, it is not improper for counsel to urge the jury to draw such a conclusion from the evidence.") (citation omitted).

[8] See, e.g., *Bolden v. State*, 272 Ga. 1 (525 SE2d 690) (2000) (reversing conviction where trial court overruled defense objection to the prosecutor's statement, "[y]ou look at what you heard from the officer, who I thought was very credible"); *Alexander v. State*, 263 Ga. 474, 477 (2) (d), n. 8 (435 SE2d 187) (1993) (prosecutor's statements "I thought [the witness] was extremely credible, and I thought you did, too"; "I'll tell you it's true. I loved finding him"; and "[the witness] told you the truth… . He was completely worthy of belief" were improper, though error was harmless).

the conclusion that Pressley should be held accountable for his actions; such an argument was permissible.[9]

*Judgment affirmed. Ellington, P. J., and McMillian, J., concur.*

---

[9] See generally *Haggins v. State*, 277 Ga. App. 742, 746 (3) (627 SE2d 448) (2006) ("It is not improper for a prosecutor to . . . stress the need for enforcement of the laws and to impress on the jury its responsibility in that regard.").